Father Flanagan's Boys' Home of Boys Town, Nebraska, et al., appellees, v. Elsie M. Turpin, executrix of estate of Berthel Turpin, deceased, et al., appellants.

No. 50173.

(Reported in 106 N.W.2d 637)

DECEMBER 13, 1960.

REHEARING DENIED FEBRUARY 8, 1961.

Emmert, Lindgren, Eller & Miller, of Des Moines, for appellants.

R. K. Craft, of Adel, for appellees.

THOMPSON, J.—On May 8, 1954, Berthel Turpin and Elsie M. Turpin, husband and wife, made their joint will, which we set out:

"We, Berthel Turpin and Elsie M. Turpin of Panora, Guthrie County, Iowa, each being of sound mind and memory do hereby make, publish and declare this to be the last will and testament of each of us made jointly for the use and benefit of the one who may survive the other, hereby revoking any and all wills by either of us heretofore made.

"Item I. We direct the payment of our just debts and funeral expenses of each of us.

"Item II. We hereby give, devise and bequeath to the survivor of us all of the property then owned or possessed by the one who dies first to be the sole and absolute property of the survivor.

"Item III.   At the death of the survivor of us we hereby devise and bequeath all the remainder of the property of either of us as follows:

"1st.    To the First Presbyterian Church of Panora, Iowa, the sum of $2,000.00.

"2nd.    To the Panora Church of the Brethren, the sum of $2,000.00.

"3rd.    To Nora Turpin Blackman in the event she survives both of us, the sum of $2,000.00.

"4th.    All the rest, residue and remainder of our estate we devise to Father Flanagan's Boys Home of Boystown, Nebraska, and the Christian Home Orphanage of Council Bluffs, Iowa, in equal shares.

"We hereby appoint the survivor of us as executor of this will the one who may survive the other to act without bond and hereby appoint C. K. Batschelet as Executor of this will at the death of the survivor of us.

"In Witness Whereof we have each subscribed our names hereto this 8th day of May, 1954.

"/s/ Berthel Turpin.      /s/ Elsie M. Turpin."

The will was duly witnessed, and no contention is made as to its proper execution.

Berthel Turpin died on May 20, 1955, leaving Elsie M. Turpin as his widow surviving.   Thereafter Elsie M. Turpin, claiming to be the sole owner of the property left by Berthel Turpin, deeded certain real estate in Guthrie County to her brother, defendant Earl J. Reynolds for his life, then to his wife, defendant Nadine Reynolds, for her life, with remainder to their children, defendants Gary E. Reynolds and Connie Louise Reynolds.   It is stipulated this real estate was of the value of $80,050.75 on the date of the conveyance, which was February 2, 1957.   On the same date Elsie M. Turpin conveyed to defendant McPherson College other real estate in Guthrie County, which by stipulation was at that time of the value of $58,500.   Elsie M. Turpin retained a life interest in each parcel of realty, and received no consideration for the conveyances but made them as gifts.   Admittedly all the real estate came to Elsie M. Turpin through the will of Berthel Turpin.

The gross estate of Berthel Turpin is shown, by stipulation, to have been $193,989. This was diminished by debts, costs of administration and federal estate taxes in the total amount of $17,971.99, leaving a net estate of $176,017.01. Berthel Turpin had been married in 1912 to Bessie G. Turpin, who died in 1952; and he had received approximately one half of the property which he left from her estate. Berthel Turpin and Elsie M. Turpin were married on June 14, 1953. At that time Elsie M. Turpin owned real and personal property of the stipulated value of $8106.82.

It is the contention of the plaintiffs that the joint will of Berthel and Elsie M. Turpin, set out above, was an irrevocable contract which Elsie M. Turpin could not defeat by depleting the estate by gifts totaling more than three fourths of the net estate. The trial court agreed, and entered its decree setting aside the conveyances to Reynolds and to McPherson College, made Elsie M. Turpin the trustee of the property of the Berthel Turpin estate in her hands, and enjoined her from disposing of it. At the same time the court dismissed defendants' cross-petition praying that title to the real estate conveyed to Reynolds and the College be quieted and that Elsie M. Turpin be declared to be the sole owner of the personal property left by Berthel Turpin. From this judgment we have the present appeal.

I.  It is evident the major question in the case is the proper interpretation of the will of Berthel and Elsie M. Turpin. This in turn depends on whether there is sufficient evidence that it constituted an irrevocable contract between them that their property should descend, upon the death of the survivor, to the devisees and beneficiaries named in the will.

Before going into a detailed discussion of the evidence on this point and the governing authorities, it will be profitable to clear up some confusion in our cases concerning terminology. In fact, the confusion is not solely ours. Other courts, and the legal profession generally, have been given to use of terms describing wills which lead to misunderstanding. The problem is thus stated in 57 Am. Jur., Wills, section 681, pages 458, 459: "The courts have not been discriminate in defining the terms 'joint,' 'mutual,' and 'reciprocal' wills. In many instances, it

is impossible to deduce the meaning of the decision in a particular case unless the reader looks beyond the terminology applied by the court to the instrument involved and considers the real nature of the will and the provisions contained therein."

It is the sometimes indiscriminate use of the words "joint", "reciprocal" and "mutual" which needs clarification. Perhaps a statement of the terms as we now understand them, if followed, will be helpful in avoiding misunderstandings. A "joint" will is nothing more than a single testamentary instrument constituting the wills of two or more persons, jointly executed. The term refers to form rather than substance. It is in effect the separate will of each maker, and generally may be separately probated on the death of each. 97 C. J. S., Wills, section 1364, pages 282, 284.

"Reciprocal" wills are those in which two or more testators make testamentary dispositions in favor of each other. This may be done by one will, in which case the will is both joint and reciprocal, or it may be done by separate wills. 97 C. J. S., Wills, section 1364, pages 288, 289. The fact that wills, otherwise reciprocal, may contain bequests to third persons does not necessarily destroy their character as reciprocal wills.

It is in the use of the term "mutual" as applied to wills that the greatest confusion has arisen. The term "mutual and reciprocal" has often been used in such a manner as to imply that they are identical, or at least of equivalent meaning. The question was not important when we held that the will itself, if joint, or the wills themselves, if separate, were sufficient evidence of a contract. But under our later holdings a joint will or separate wills, even if reciprocal, are not such evidence. It is necessary to point out that "reciprocal" and "mutual" may now have different meanings. A joint will, or separate wills, may be reciprocal without being mutual, although they may be both. For that matter, wills may be joint and reciprocal and mutual; but they are not necessarily so. A will is "joint" if it is the will of two or more persons in one instrument; "reciprocal" if it contains reciprocal gifts or property among two or more makers; but it is "mutual" in Iowa only if it is executed pursuant to an agreement. We quote

from 97 C. J. S., Wills, section 1364, page 287: "Under other authorities, the term 'mutual,' so far as it relates to wills, appears to be applied and confined by the courts to wills which are executed in pursuance of a compact or agreement between two or more persons to dispose of their property, either to each other or to third persons, in a particular mode or manner, each in consideration of the other." Cited in support of this proposition are Luthy v. Seaburn, 242 Iowa 184, 46 N.W.2d 44, and Maloney v. Rose, 224 Iowa 1071, 277 N.W. 572. We agree with the statement quoted. The term "mutual" is properly applied to wills only when there is evidence sufficient to show a binding agreement as to disposal of the property of the makers in a certain way. If there is not such evidence, the wills may be reciprocal, but they are not mutual.

II. The will now before us was undoubtedly joint and reciprocal. The difficult question is whether it was also mutual. There can be no doubt that prior to our decision in In re Estate of Lenders, 247 Iowa 1205, 1214, 78 N.W.2d 536, 541, we had often said that the existence of a contract might be inferred from the execution of reciprocal wills by a husband and wife, at substantially the same time and each with the knowledge of the other. Jennings v. McKeen, 245 Iowa 1206, 1211, 65 N.W.2d 207, 209, 210; In re Estate of Johnson, 233 Iowa 782, 787, 10 N.W.2d 664, 667, 148 A. L. R. 748, 754; Culver v. Hess, 234 Iowa 877, 883, 884, 14 N.W.2d 692, 695; Campbell v. Dunkelberger, 172 Iowa 385, 389–392, 153 N.W. 56, 58. Many other cases to the same effect might be cited. In Campbell v. Dunkelberger, supra, at page 390 of 172 Iowa, page 58 of 153 N.W., is this frequently quoted statement: "But where the wills are in the same instrument and executed and signed by the parties, it is scarcely possible that this could happen without a previous understanding or agreement between them." To the same effect is this language from Maurer v. Johansson, 223 Iowa 1102, 1107, 274 N.W. 99, 102: "If, as in this case, the wills of the husband and wife, each acting with the knowledge of the other, are drawn at substantially the same time, at their joint request, and contain reciprocal provisions, such wills and circumstances are sufficient to establish the prior contract to make mutual wills."

■ On September 18, 1956, our decision in the Lenders case, supra, was handed down. There we said, at page 1214 of 247 Iowa, page 541 of 78 N.W.2d: "According to the great weight of authority there must be other evidence of a contract between the testators." Authority is cited. We followed this in In re Estate of Ramthun, 249 Iowa 790, 802, 89 N.W.2d 337, 344, with this statement: "* * * according to the great weight of authority, there must be other substantial evidence of the contract between the testators, to make it mutual or reciprocal." In Allinson v. Horn, 249 Iowa 1351, 1356, 1357, 92 N.W.2d 645, 648, we said: "In recent decisions we have modified the theory that simultaneous execution of reciprocal wills alone creates an inference of the existence of a contract or agreement. We have held that a greater quantum of proof than the execution of the wills is necessary to establish such contract." Next came Barron v. Pigman, 250 Iowa 968, 972, 95 N.W.2d 726, 729, which followed the rule of the Lenders, Ramthun and Allinson cases. We also quoted with approval from the Ramthun case: "In order that either party be denied the right to revoke, it must appear by clear and satisfactory evidence, or on the face of the wills, that they were executed in pursuance of such contract provisions between the parties."

We think the rule of the Lenders and succeeding cases is sound, and reaffirm it. The question then becomes one of fact: Is there clear and satisfactory evidence of a contract apart from the execution of the joint will itself? Do the facts and proper inferences show an intent to make a binding agreement?

III. The able trial court thought there was such evidence. It found it in the testimony of J. E. Batschelet, the attorney who drew the will. Mr. Batschelet said that when Berthel and Elsie M. Turpin came to his office on May 8, 1954, they brought with them a copy of another joint will and said they wanted one like it. Other testimony shows this as a copy of the joint will of Berthel Turpin and his first wife, Bessie. The court also laid stress upon the fact that Mr. Batschelet's first draft of the will showed a bequest to the First Presbyterian Church of Panora in the sum of $2000; and that Elsie M. Turpin then said that since a bequest was being made to Berthel Turpin's

church, she thought her church should get an equal amount; to this Mr. Turpin agreed, and the will was redrawn to include a bequest of like amount to the Panora Church of the Brethren.

█ We are unable to find that either of these matters shows an agreement to make a contract for an irrevocable will or that the property of the survivor should be devised and bequeathed in any certain way or to certain beneficiaries. Indeed, the fact that they asked for a will like the copy of Berthel and Bessie C. Turpin's will which they produced tends to negative any contract. It has been held under the court's ruling on Count I of plaintiffs' petition in the instant case that the joint will of Berthel and Bessie G. Turpin was not a mutual will, and no appeal was taken by the plaintiffs from this part of the decree. So, if we are to take the literal statement that Berthel and Elsie M. Turpin wanted a will like the one whose copy they produced, we must conclude they wanted a joint and reciprocal but not mutual will. Perhaps too much stress should not be put upon this phase of the evidence, since it is more probable they were referring to the form and the parties named as beneficiaries than to any contractual aspect. But certainly the incident does not make "clear and satisfactory" evidence that the parties were making a mutual will or had any contract as to irrevocability.

Nor can we put substantial weight upon the fact that Elsie wanted her church to be remembered in the same amount as was her husband's. The circumstance hardly tends to show strongly that the parties were making an irrevocable will, by an agreement understood between them. It is consistent with the thought that the will might or might not become effective upon the death of the survivor, or that there might or might not be sufficient property remaining in that survivor's estate to pay the comparatively small bequests to the churches. Indeed, as of the date of the trial below, Elsie M. Turpin was still possessed of ample funds to pay them, and she had not changed her will.

The trial court thought the evidence of Mr. Batschelet was "the same clear and convincing evidence as shown in the case above cited of Barron v. Pigman", in which we held the evidence sufficient to show a contract. Barron v. Pigman, supra, 250 Iowa 968, 95 N.W.2d 726. We think an examination of the

Barron case will show a marked difference. In the Barron case the attorney who drew the wills told the parties before they executed them, "the right to change as far as the survivor is concerned would be gone. * * * they both indicated it was all right." We said, in Barron v. Pigman, page 972 of 250 Iowa, page 729 of 95 N.W.2d: "The record shows without dispute they had previously considered, discussed and orally agreed upon this disposition of their property upon their respective deaths, and that their reciprocal wills were executed to formally express and give legal effect to their compact." No such evidence appears in the instant case. Where Mr. Robert C. Nelson, the attorney who drew the wills in the Barron case, testified he told the parties the wills would be irrevocable and they agreed, Mr. Batschelet here makes no such statement. He may have thought the will was mutual; in fact he advised Elsie M. Turpin after her husband's death it could not be changed; and in the state of the law at the time the will was drawn, such a belief may be understood. But he does not say he advised the parties at the time of execution of the will or any previous time they were making an irrevocable instrument, or give any other testimony from which a binding agreement between them may be inferred. So far as his testimony goes, Berthel and Elsie Turpin advised him they wanted a joint and reciprocal will drawn; it goes no further.

There is one other item of evidence, not referred to by the trial court or by the parties in argument, which we think should be mentioned. Exhibit I, introduced into evidence by stipulation, is a copy of the Federal Estate Tax return in the Berthel Turpin estate, filed by Elsie M. Turpin as executrix. It is consistent with her claim that by the will of Berthel Turpin she became the sole owner of all property he left and that their joint will was not mutual in the sense we have now defined the term. She claimed, in Schedule M, a marital deduction, allowable if she were the absolute owner of the property of the estate. She made no claim for charitable deductions under Schedule N of the return. But the Director of Internal Revenue, apparently determining that the joint will was mutual and irrevocable, disallowed any marital deduction but did allow a charitable

deduction. This means, as we understand it, that at least for federal tax purposes, Elsie M. Turpin was held to have only a form of life estate in the property and, since it was to descend to charitable institutions upon her death, the estate was given a charitable exemption under Schedule N, rather than a marital deduction under Schedule M.

Thereupon a deficiency assessment was levied against the estate, and Exhibit J, also in the record by stipulation, subject to objection by the defendants, was issued by the Internal Revenue Department. It is denominated "Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment." A detailed accounting, which is part of this exhibit, shows the disallowance of the marital deduction claimed, except as to a comparatively small amount of jointly owned property not involved in this litigation, and the allowance of an exemption for "charity remainder." Elsie M. Turpin, as executrix of the Berthel Turpin estate, signed this instrument, and in so doing we may assume she accepted its terms. To some extent it is an admission against interest; she accepted the conclusion of the Director of Internal Revenue that she was not the full owner of the property, was not entitled to a marital deduction but was entitled to a charitable deduction. But it must be remembered this was the ruling of the Director; it was contrary to what she had first claimed, and she had no alternative but to accept it other than recourse to the Federal courts and litigation there. We cannot hold that this in itself is sufficient clear and satisfactory evidence upon which to base a finding of a contractual agreement. The record shows nothing from which we can conclude there is evidence outside the will itself that it was intended to be mutual; nor does the will so show upon its face.

IV. The trial court also seems to have predicated its decision upon a stated rule of law that if after the death of one of the parties the survivor accepts the provisions and benefits of the will of the one first to die, such survivor may not thereafter dispose of his property other than in accord with the terms of the mutual will. Cited in this connection by the court are Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998,

and Culver v. Hess, supra, 234 Iowa 877, 14 N.W.2d 692. Other cases have stated the rule. Thus, in DeJong v. Huyser, 233 Iowa 1315, 1320, 11 N.W.2d 566, 569, it is said: "We have held repeatedly that in a joint will there is a contractual relation which becomes irrevocable after one of the testators dies and the other accepts benefits thereunder." But it must be pointed out that this rule does not come into play until the mutual, by which we mean contractual, character of the will has been proven by sufficient competent evidence. If there is no binding contract, the survivor in a joint, or reciprocal, or joint and reciprocal will does not make one by accepting what the will of the first to die gives him. The contract must first be proven.

Other questions discussed in the briefs become moot with our holding set forth above. It is our conclusion the plaintiffs have failed to show by the required quantum of proof that there was a contractual arrangement between the makers of the joint and reciprocal will of Berthel and Elsie M. Turpin that the survivor might not revoke it or dispose of the property, received under it, prior to death and as he or she might determine. It may be surmised that Berthel Turpin might be surprised at the eventual devolution of his property; but we cannot for that reason change the law.

The judgment of the trial court is reversed and the cause remanded for decree in accordance with this opinion.—Reversed and remanded for decree.

All JUSTICES concur.