In the Matter of the ESTATE of Thomas H. RYDER, Deceased.

Thomas H. RYDER, Jr., Executor, Appellee,

v.

R. Bruce McCLOSKEY, Conservator for Vallie S. Ryder, Appellant.

No. 56535.

Supreme Court of Iowa.

June 26, 1974.

Bierman & Bierman, Grinnell, for appellant.

Brierly, McCall & Girdner, Newton, for appellee.

Heard before MOORE, C. J. and RAWLINGS, LeGRAND, UHLENHOPP and HARRIS, JJ.

LeGRAND, Justice.

The question to be decided is whether a joint instrument executed on November 10, 1954, by Thomas H. Ryder and Fannie Ryder, husband and wife, was a mutual will binding upon Thomas H. Ryder, who survived his wife and who later made a new testamentary disposition of property including provisions in favor of Vallie S. Ryder, whom he married following the death of Fannie. The trial court held the instrument to be a mutual will. We reverse.

The contestants are Thomas H. Ryder, Jr., as executor of his father's estate, who argues for an affirmance of the trial court's decree, and R. Bruce McCloskey, conservator for Vallie S. Ryder, who insists the later instrument must prevail.

The practical considerations are these: If the will executed in 1954 is mutual, then the three surviving sons of Thomas H. Ryder take his property with the exception of a few gifts of personal items to grandchildren. If, on the other hand, the later will prevails, Vallie S. Ryder receives a life estate and the remainder upon her death goes to the three sons.

This case was tried as a declaratory judgment action in equity, and our review is de novo. Estate of Randall v. McKibben, 191 N.W.2d 693, 698 (Iowa 1971). We should mention our present § 633.270, The Code, providing that only wills which expressly state such intention may be construed as mutual is not applicable here because all rights under the challenged instrument would have vested at the death of Fannie Ryder, long before the ef-

fective date of that statute. See § 633.-2(2), The Code, and Estate of Randall v. McKibben, supra, 191 N.W.2d at 699.

Of course, the 1954 will was joint and reciprocal; the question is whether it was also mutual. We defined these terms in Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 607–608, 106 N.W.2d 637, 640 (1960) as follows:

"A will is 'joint' if it is the will of two or more persons in one instrument; 're-ciprocal' if it contains reciprocal gifts or property among two or more makers; but it is 'mutual' in Iowa only if it is executed pursuant to an agreement."

See also In re Estate of Logan, 253 Iowa 1211, 1215, 115 N.W.2d 701, 704 (1962).

As proponent of the joint 1954 will, the executor had the burden of proving by clear and convincing evidence that the instrument was intended to be the mutual will of his parents. It would then have become irrevocable upon Fannie's death, and the rights of the parties would then have vested. Sawyer v. Sawyer, 261 Iowa 112, 117, 118, 152 N.W.2d 605, 609, 610 (1967); In re Estate of Lenders, 247 Iowa 1205, 1213, 78 N.W.2d 536, 541 (1956).

Prior to our decision in In re Estate of Lenders, supra, we had long held the existence of a contract to make mutual wills might be inferred from the fact that reciprocal provisions were included in an instrument executed by the husband and wife, each with the knowledge of the other, at substantially the same time and at their joint request. However, the *Lenders* case adopted a rule, said to be supported by the great weight of authority, which requires other evidence of a contract before these circumstances permit a finding of mutuality. (See 247 Iowa at 1214, 78 N.W.2d at 541.)

The *Lenders* doctrine has been followed by a long line of cases since 1956. In Sawyer v. Sawyer, supra, 261 Iowa at 118, 152 N.W.2d at 609 we said this:

"Prior to our Lenders decision we had said several times the existence of such an agreement might be inferred from the execution of reciprocal wills by a husband and wife, at substantially the same time, each with knowledge of the other. However in Lenders we said: 'According to the great weight of authority there must be other evidence of a contract between the testators.' * * *

"We have followed the statement just quoted in many subsequent decisions, including In re Estate of Ramthun, 249 Iowa 790, 802, 89 N.W.2d 337, 344; Allinson v. Horn, 249 Iowa 1351, 1356, 1357, 92 N.W.2d 645, 648; Barron v. Pigman, 250 Iowa 968, 972, 95 N.W.2d 726, 729; Father Flanagan's Boys' Home v. Turpin, supra, 252 Iowa 603, 609, 106 N.W.2d 637, 640; Vilter v. Myers, supra, 255 Iowa 818, 820, 123 N.W.2d 334, 337."

As bearing on this question, too, is the following statement from Estate of Randall v. McKibben, supra, 191 N.W.2d at 699:

"A greater quantum of proof than the mere execution of a joint will is, however, essential to the creation of a mutual testamentary instrument. That proof may be by extrinsic evidence or it may appear on the face of the will, or both."

Applying these principles to the record now before us, we conclude the 1954 joint will of Thomas H. Ryder and Fannie Ryder was not their mutual will. Consequently the later will executed by Thomas H. Ryder in 1965 is established as his valid last will and testament.

The case was submitted on stipulated facts except for brief testimony by the executor Thomas H. Ryder, Jr. The 1954 joint will was prepared by Thomas H. Ryder on a printed form and signed by both him and Fannie. Its provisions are brief. After appointing Thomas H. Ryder, Jr. as executor without bond and making provi-

sions for disposition of the property at the death of the one who first died, the will went on to include this provision:

"At both our deaths, all monies, bonds and real estate to be divided equally between our three sons, Harry, Donald and Thomas H., Jr.

"In case of the deaths of those named above, their children to receive their father's share."

We see nothing in this will to suggest an agreement this instrument was to be contractually binding. The executor argues the words "at both our deaths" make such an intention clear. We disagree. That language does no more than establish that was their desire when the will was executed. This goes without saying; otherwise they would not have executed it in the first place. However, there is no language in the will which warrants a finding the desire then expressed was to be contractually binding unless revoked while both were still alive. We have said such evidence may be found within the will itself; but there is none. Estate of Randall v. McKibben, supra; In re Logan's Estate, supra, 253 Iowa at 1216, 115 N.W. 2d at 705.

Since we find the will itself fails to produce proof of mutuality, we consider next whether there is any extrinsic evidence which, either standing alone or together with the language of the will, does so. We are unable to discover any.

In addition to certain stipulated facts which throw no light on the question to be decided, there was testimony by Thomas H. Ryder, Jr. It did little to clarify the matter. He testified without objection to a conversation he had with his mother and father concerning the 1954 will. That conversation established only that Mr. and Mrs. Ryder had executed a will in 1954 and that they had made it "as a joint instrument." This had already been stipulated. On cross-examination the executor testified neither his mother nor his father had said they had entered into a contract to leave the estate in a certain manner. He also said his father had mentioned several times he was glad he had his will "taken care of." However, he said nothing which can be taken as evidence he had made an agreement with Fannie that the joint will was binding and irrevocable once either of them died while it remained unchanged.

The executor leans heavily on Campbell v. Dunkelberger, 172 Iowa 385, 390, 153 N.W. 56, 58 (1915). However, this case antedated In re Lenders, supra, which robbed *Campbell* of much—perhaps all—of its vitality. See Father Flanagan's Boys' Home v. Turpin, supra, 252 Iowa at 608, 609, 106 N.W.2d at 640, 641.

We hold the executor has failed to establish the 1954 instrument was a mutual will by the quantum of proof required. The judgment is accordingly reversed, and the will executed by Thomas H. Ryder on January 19, 1965, is hereby established as his valid last will and testament.

By stipulation the parties agreed this matter was to be tried both as a declaratory judgment action and as a suit to quiet title to a parcel of residential property in Newton. The quiet title action was ignored in the trial court's decree and was not argued here. It appears our decision necessarily disposes of any title questions, too. However, to avoid possible further controversy, we remand to the trial court for entry of a judgment consistent herewith, including such order as may be necessary or proper with reference to the quiet title action.

Reversed and remanded with instructions.