**In the Matter of the ESTATE of Helen E. GRAHAM, Deceased.**

**Mary G. Sacco and Julie Ann Jones, Executor of the Estate of Dorothy A. DeVore, Appellants,**

**v.**

**Susan A. Richardson, Executor of the Estate of Helen E. Graham, and Susan A. Richardson, Individually, Appellee.**

**No. 03–1817.**

Supreme Court of Iowa.

Dec. 17, 2004.

Richard O. McConville of Coppola, Sandre, McConville & Coppola, P.C., West Des Moines, and Richard J. Murphy, Osceola, for appellants.

G. Stephen Walters of Jordan, Oliver & Walters, P.C., Winterset, for appellee.

STREIT, Justice.

This appeal concerns the interpretation of a will executed more than forty years ago. The question presented is whether the 1962 will of John and Helen Graham was a mutual will. We must decide whether the Grahams' will was in effect a contract to divide up their earthly possessions in equal shares to their three daughters. The district court ruled the will was not

mutual. As a consequence, the court found Helen could change her will after her husband's death without incurring liability to two daughters she disinherited. Because we find the will was mutual, we reverse and remand with instructions.

## I. Facts and Prior Proceedings

John and Helen Graham, a married couple, had three daughters: Charlene, Dorothy, and Mary. In 1962, John and Helen executed a joint will in which they each promised to leave everything to whoever survived; at death, the survivor would give everything to their three daughters in equal shares. The 1962 will named Charlene executor of the survivor's estate.

In 1972, John passed away. Neither John nor Helen changed the 1962 will before John's death.

In 1987, Helen executed a codicil to the 1962 will. The codicil retained the equal distribution of assets to the daughters but provided that Charlene's share would be held in trust for her benefit. Upon termination of the trust, the codicil directed the trustee to distribute the remaining principal and income to Susan, Charlene's daughter. The trust was designed so Charlene would remain eligible to receive financial assistance from the government. The codicil also removed Charlene as executor, substituting Mary in her stead.

All three daughters contemporaneously signed a separate agreement in which they approved of the codicil's changes to the 1962 will. Helen did not sign the agreement, but the codicil expressly referenced it, noting that "[a]ll of the heirs named in [the 1962 will] have entered into an Agreement approving and agreeing with the changes...."

In 1999, Helen executed a new will that revoked all prior wills she had previously made. In the 1999 will, Helen effectively disinherited her three daughters. Helen gave the bulk of her estate to her granddaughter Susan, whom she also appointed executor. Susan had lived with Helen in Osceola and cared for her grandmother in her last years.

In 2002, Helen died. She left an estate valued at approximately $70,000. Susan, as executor of her grandmother's estate, admitted the 1999 will into probate.

Mary and Dorothy sued their mother's estate and Susan individually.[1] The daughters claimed the 1962 will was a "mutual will" and sought a declaration that Helen breached her contractual obligations when she died having executed the 1999 will. The daughters asked the court to set aside the 1999 will and impress a trust upon the estate in favor of the beneficiaries of the 1962 will. The daughters also asked the court to remove Susan as executor and appoint Mary instead.[2]

The parties filed competing motions for partial summary judgment. The district court granted the defendants' motion and denied the daughters' motion; relying upon the language of the preamble of the will, the court ruled the will was not a mutual will.

## II. Scope and Standards of Review

■■■■ Review of a ruling on a motion for summary judgment is for correction of

---

1. Three days after filing suit, Dorothy died. Dorothy's daughter, Julie, was appointed executor of her estate and took Dorothy's place in the present action.

2. In addition, the daughters requested the district court set aside probate of the 1999 will because, they alleged, it was the product of undue influence and Helen lacked testamentary capacity when it was executed. The district court did not rule on the issues of undue influence and lack of testamentary capacity. We do not discuss them further.

errors at law. *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). Summary judgment is proper

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3). We are obliged to view the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences. *Barreca*, 683 N.W.2d at 116.

### III. The Merits

### A. Contractual Will

■ The question presented in this appeal is whether the Grahams' 1962 will is a mutual will. A mutual will (more transparently referred to as a "contractual will") exists "only when there is evidence sufficient to show a binding agreement as to disposal of the property of the makers in a certain way." *Father Flanagan's Boys' Home v. Turpin*, 252 Iowa 603, 608, 106 N.W.2d 637, 640 (1960); *see also Duhme v. Duhme*, 260 N.W.2d 415, 419 (Iowa 1977); *In re Estate of Chapman*, 239 N.W.2d 869, 871 (Iowa 1976); *In re Estate of Ryder*, 219 N.W.2d 552, 554 (Iowa 1974). Evidence is sufficient only if it is clear and convincing. *See Ryder*, 219 N.W.2d at 554 ("[T]he executor had the burden of proving by clear and convincing evidence that the instrument was intended to be [a] mutual will . . . ."); *accord Sawyer v. Sawyer*, 261 Iowa 112, 118, 152 N.W.2d 605, 609 (1967) ("clear and satisfactory evidence"); *In re Estate of Ramthun*, 249 Iowa 790, 799, 89 N.W.2d 337, 342 (1958) ("clear, satisfactory and convincing"). "A mere preponderance of the evidence is not sufficient." *Ramthun*, 249 Iowa at 799, 89 N.W.2d at 342.

A more exacting quantum of proof is required because of

> the serious and far-reaching consequences of such an agreement, which may have the effect of preventing the surviving spouse from altering his or her estate plan to suit intervening changes in circumstances . . . that may render provisions of the contractual wills inappropriate or unfair, so much so that the deceased spouse, had he or she lived, would have desired or sanctioned appropriate changes in the testamentary provisions.

*Lamberg v. Callahan*, 455 F.2d 1213, 1218 (2d Cir.1972). A mutual will is in essence a "contract as to irrevocability." *See Father Flanagan's Boys' Home*, 252 Iowa at 610, 106 N.W.2d at 641.

Whether a given will is a contractual will can be a difficult matter to decide. A history of shifting legal definitions and standards have not helped matters. As a noted commentator once remarked, "[t]he contractual will in Iowa is a thicket of perplexity upon whose thorns the supreme court has frequently found itself impaled." N. William Hines, *Freedom of Testation and the Iowa Probate Code*, 49 Iowa L.Rev. 724, 738 (1964). Fortunately, the present state of the law is now relatively clear and settled.

■ Matters were helped on January 1, 1964 when the Iowa Probate Code became effective. *See* Iowa Code ch. 633 (2001); *see also id.* §§ 633.1 (short title), 633.2 (effective date). "In order to avoid the complexities and uncertainties of litigation involving [contractual] wills, [section] 633.270 was enacted." 1 Sheldon F. Kurtz, *Kurtz on Iowa Estates* § 4.52, at 216 (3d ed.1995) [hereinafter Kurtz]. That section of the probate code expressly provides that in Iowa "[n]o will shall be construed to be contractual or mutual, unless in such will the testator shall expressly state the intent

that such will shall be so construed." Iowa Code § 633.270. In other words, extrinsic evidence of testator intent is not permitted; the evidence must be found within the four corners of the will itself. *Chapman*, 239 N.W.2d at 871 (when the probate code applies, "the evidence to establish a mutual will must be found in the instrument itself"); *In re Estate of Prehoda*, 309 N.W.2d 516, 520 (Iowa Ct.App. 1981); *see, e.g., Floerchinger v. Williams*, 260 Iowa 53, 56–60, 148 N.W.2d 410, 412–14 (1967) (considering only text of will itself and not extrinsic evidence).[3] The reason for the rule is clear: "[t]hose who desire mutual wills are required to say so since theirs is the unusual rather than the usual intent." *Floerchinger*, 260 Iowa at 58, 148 N.W.2d at 413 (quoting bar committee comment).

■ Although the Grahams' 1962 will was executed before the effective date of the probate code, the parties agree the provisions of the probate code apply to the present dispute. The rights of beneficiaries under a contractual will do not accrue or vest until one of the testators dies. *Id.* at 59–60, 148 N.W.2d at 412–14; *see* Iowa Code § 633.2(2) (enactment of probate code shall not impair any "accrued or vested right"). Because John died after the effective date of the probate code, section 633.270 applies to this case. *Compare Floerchinger*, 260 Iowa at 59–60, 148 N.W.2d at 412–14 (section 633.270 applied to will executed in 1963 because testator died after the effective date of probate code), *with Sawyer*, 261 Iowa at 119, 152 N.W.2d at 610 (same section did not apply when one testator died before effective date).

The district court ruled the 1962 will was not a contractual will. The court fo-

cused upon the preamble to the will, which stated:

> We, the undersigned, John R. Graham and Helen E. Graham ... *mutually agree, each in consideration of the promise and act of the other*, to revoke all wills by us heretofore made, and to dispose of our property in the manner hereinafter set forth; and we do make, publish and declare the following as our *joint and several wills* ....

(Emphasis added.) Although the district court recognized the phrases "mutually agree" and "each in consideration of the promise and act of the other" supported the conclusion that the parties intended their joint will to be contractual, the court seized upon the fact that the parties referred to the document as their "joint and several wills." The court pointed out "several" is commonly defined as "separate," "exclusive," or "relating separately to each individual involved." The court ruled "[t]his language represents the most specific ... indication of the parties' intent regarding the mutual or individual character of the instrument" and, as a consequence, concluded the 1962 will was not contractual. The court contrasted the language in the Grahams' will with that in the preamble to a contractual will in another case which referred to the testators' "joint and *mutual* wills." *See Chapman*, 239 N.W.2d at 872–73 (emphasis added).

■ We disagree with the district court's conclusion; the Grahams' 1962 will is clearly a contractual will. The most specific indication of the testators' intent can be found in their use of the phrases "mutually agree" and "each in consideration of the promise and act of the other." In the former phrase the Grahams specifi-

---

3. Pre-probate code cases holding otherwise are no longer good law in this respect. *See, e.g., In re Estate of Logan*, 253 Iowa 1211, 1216, 115 N.W.2d 701, 704 (1962) ("The proof may be by extrinsic evidence or it may appear on the face of the wills.").

cally stated their *mutual* intent; in the latter they expressly recorded for posterity that their joint will was the product of *consideration*, insofar as each made certain promises in the will to the other. The 1962 will revoked all prior wills and provided for the full disposition of the survivor's property. Each testator promised that if he or she survived the other, he or she would dispose of the property in equal shares to their three daughters; put differently, each testator promised to forbear from changing the terms of their joint will after the other spouse died. "[T]he mutual promises alone of [married testators] to dispose of their jointly owned property in a manner satisfactory to each of them is good consideration...." *Id.* at 872 (concluding the spouse who died first "got what he wanted," i.e., "the contractual assurance that, if he should die first, his property would go according to his wishes"); *see also* Kurtz § 4.52, at 213 ("The consideration for the contract is generally the reciprocal disposition in each will but it may also be the forbearance of each to dispose of his property in another manner."). Clear and convincing evidence of the Grahams' intent to form a contractual will is plainly found within the four corners of their joint will. *Cf. Prehoda,* 309 N.W.2d at 520 (finding contractual will where testators agreed the survivor would dispose of a single asset in a certain way). "Where, as here, the will itself states there is an agreement the evidence of, or facts of the agreement, appears on the face of the will. We cannot disregard it." *In re Estate of Logan,* 253 Iowa 1211, 1216, 115 N.W.2d 701, 705 (1962).

The defendants rejoin that the reference in the preamble to the will as the testators' "joint and several wills" mandates a contrary conclusion. We do not agree. "The fact that the parties declared the document to be their 'several will' as well as their 'joint will' does not necessarily negate an intention to enter into a binding contractual relationship." *In re Estate of Richardson,* 11 Wash.App. 758, 525 P.2d 816, 818 (1974).[4] The defendants overemphasize the use of this one word; when construing a will, a court must look at the intent of the parties as expressed in the entire document.

> In ascertaining the intent of the testator, which is the guiding light in will interpretation, we rely primarily on the language contained in the will; however, the substance and intent, rather than the words, are to control. To ascertain the substance and intent *we examine the entire will* ....

*Russell v. Johnston,* 327 N.W.2d 226, 229 (Iowa 1982) (emphasis added). "[E]ach part should be considered in relation to every other part and all provisions given effect unless clearly in conflict with some positive rule of law." *Logan,* 253 Iowa at 1217, 115 N.W.2d at 705. The plain effect of the defendants' interpretation is to completely discard the use of the phrases "mutually agree" and "each in consideration of the promise and act of the other." "No part of the will," however, "should be discarded without sound reason." *Id.* Fortunately, a more reasonable and harmonious interpretation of the word "several" is readily available.

The term "several" has a number of meanings depending upon the context in

---

4. In *Richardson,* the Washington Court of Appeals remanded for a factual finding on the issue of agreement. *Richardson* is distinguishable in this respect, however, because (1) the will in that case did not expressly state it was "mutual" or "contractual" and (2) while the will referred to an exchange of "conditions," extrinsic evidence—apparently admissible at the time in Washington— seemed to indicate there was not such an agreement.

which it is used. In the present case, "several" is paired with "joint." A joint will, of course, is defined as "a single testamentary instrument constituting the wills of two or more persons, jointly executed." *Father Flanagan's Boys' Home*, 252 Iowa at 607, 106 N.W.2d at 639. We have also pointed out that a joint will is "in effect the separate will of each maker, and generally may be separately probated on the death of each." *Id.* When read in context of the entire document, we think the use of "joint and several" in the 1962 will must mean the will, to be probated on the death of each testator, comprises the intentions of John and Helen together and *individually*.

 Not surprisingly, support for this interpretation of the phrase "joint and several" can be found in the law of contracts. "Copromisors are liable 'jointly' if all of them have promised the entire performance which is the subject of the contract." 12 Richard A. Lord, *Williston on Contracts* § 36:1, at 610 (4th ed.1999).

> When a 'several' obligation is entered into by two or more parties in one instrument, it is the same as though each has executed separate instruments.... [E]ach is bound separately for the performance which he or she promises, and is not bound jointly with anyone else.

*Id.* at 611. A "joint and several" contract "is a contract with each promisor and a joint contract with all, so that parties having a joint and several obligation are bound jointly as one party, and also severally as separate parties at the same time." *Id.* at 611–12. In the context of the Grahams' will, then, "several" means "personal," "individual," or "separate" but *not* "noncontractual" or "nonmutual." *See id.*; *see also Healey v. Story*, 3 Exch. 2, 3

(1848) ("severally" is equivalent to "personally"); *cf. Young v. Bierschenk*, 199 Iowa 309, 311, 201 N.W. 591, 594 (1925) (referring to a joint and several contract as a contract that binds each promisor personally to the full amount of the contract); *Bayers v. Chi., Rock Island & Pac. Ry.*, 52 Iowa 478, 478, 3 N.W. 522, 522 (1879) (same); *Linder v. Lake*, 6 Iowa 164, 168 (1858) ("A joint obligation and right, may co-exist with a several obligation, or right; for there may arise from the same contract, one joint duty to all, and also several joint duties to each of the parties." (Citation omitted.)). A "joint and several will" thus binds each testator jointly and personally to its provisions. The Grahams' statement in the 1962 will that the will was their "joint and several wills" does not trump other language in the will that unequivocally evidences its contractual nature. While Iowa Code section 633.270 requires such intent to be expressly stated within the four corners of the will, it does not mandate use of certain magic words. Nor does it proscribe any words.

We have previously declared a will with language nearly identical to this will's language to be a contractual will. In *Logan*, we were asked to decide, *inter alia*, whether a will that contained the phrase "mutually agree each in consideration of the promise and act of the other" in its preamble was a contractual will. 253 Iowa at 1212, 115 N.W.2d at 702–03. The testators in *Logan* also declared the will to be their "joint and several wills." *Id.* at 1213, 115 N.W.2d at 703. Although we did not discuss the import of this latter phrase, we nonetheless held the will was a contractual will.[5] *Id.* at 1216, 115 N.W.2d at 704–05.

---

5. The defendants correctly point out *Logan* is a pre-probate code case and attempt to distinguish it for this reason. The enactment of section 633.270, however, only served to

place a bar on the use of extrinsic evidence. The court in *Logan* did not rely on extrinsic evidence to reach the conclusion that the will was contractual.

We also note the reports of decisions from other jurisdictions contain contractual wills that employ the self-identifying phrase "joint and several wills" or similar language. *See, e.g., Ill. Masonic Children's Home v. Flynn,* 109 Ill.App.3d 744, 65 Ill.Dec. 334, 441 N.E.2d 126, 128–29 (1982); *Wilke v. Thomas,* 295 S.W.2d 283, 283 (Tex.Civ.App.1956); *Sipple v. Zimmerman,* 39 Wis.2d 481, 159 N.W.2d 706, 708 (1968); *Doyle v. Fischer,* 183 Wis. 599, 198 N.W. 763, 763 (1924).

Because we hold the 1962 will is a contractual will, we need not consider the circumstances surrounding the execution of the codicil and agreement in 1987 as further evidence that the 1962 will was contractual.

## B. Remedy

Having determined the Grahams' 1962 will is a contractual will, we must now determine its effect upon the codicil and the 1999 will. The daughters claim a contractual will cannot be revoked and suggest we set aside probate of the 1999 will in favor of the 1962 will as amended by the codicil. In the alternative, the daughters ask that we impress a trust upon the estate in favor of the beneficiaries of the 1962 will and appoint Mary executor.

■■■ While a contractual will is a contract as to irrevocability, it may be revoked. In this sense, a contractual will is like any other contract; contracts, as they say, are made to be broken. As we wrote in *Chapman,*

> A will becomes effective only at the testator's death. Until that time, it may always be revoked. This rule is not changed because, in revoking a will, the testator may violate a contract not to do so.

This does not mean the testator may escape his contractual obligations by the expedient of revoking a will designed to carry them out. It simply means the remedy lies elsewhere. Under various circumstances courts have allowed damages for breach of contract, decreed specific performance in an equitable action, and impressed a trust on the testator's property for the benefit of those favored in [a] repudiated mutual will.

239 N.W.2d at 872–73 (citations omitted). *But see Duhme,* 260 N.W.2d at 419 (while all testators are living, any testator may revoke contractual will without incurring liability to beneficiaries if notice is given to the other testators). "The ambulatory nature of a will is not changed merely because in revoking the mutual will the contract is breached." Kurtz § 4.52, at 216.

■■■ When she died with the 1999 will, Helen broke her contractual obligations to the beneficiaries under the 1962 will which she had jointly and mutually executed with her late husband. As in *Chapman,* we think the appropriate remedy is to impress a trust upon the property owned by Helen at the time of her death in favor of the beneficiaries under the 1962 will. 239 N.W.2d at 873. Susan, the executor, shall distribute this property in accordance with the terms of that instrument, as amended by the codicil, in order to enforce the rights of the beneficiaries. *See id.* We do not think it proper, however, to replace Susan as executor, because the original appointment of Charlene as executor was not a material term of the Grahams' contractual agreement.[6]

## IV. Conclusion

The Grahams' 1962 will is a contractual will, notwithstanding reference in its

---

**6.** Although this opinion nearly moots the issues of undue influence and lack of testamentary capacity concerning the 1999 will, we do not reach these issues.

preamble to its "joint and several" nature. A trust shall be imposed upon all property owned by Helen at the time of her death in favor of the beneficiaries under the 1962 will as amended by the codicil. Susan shall distribute the corpus of the trust accordingly.

All costs shall be assessed against the estate and not Susan individually.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur, except TERNUS, J., who takes no part.