**TEAMSTERS LOCAL UNION NO. 421 and John Gotto, Appellants,**

v.

**CITY OF DUBUQUE, Appellee.**

**No. 04–0736.**

Supreme Court of Iowa.

Dec. 9, 2005.

Scott D. Soldon and Andrea F. Hoeschen of Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, WI, for appellants.

Barry A. Lindahl, Dubuque, for appellee.

William F. Sueppel of Meardon, Sueppel & Downer, P.L.C., Iowa City, for amicus curiae Iowa League of Cities.

Donald C. Hoskins, Marion, for amicus curiae City of Marion.

CADY, Justice.

This appeal from a declaratory judgment requires us to decide whether a city snowplow operator is a "critical municipal employee" under a statute allowing cities to impose reasonable residency restrictions on such employees. The district court determined that the city snowplow operator was a critical employee and was subject to the municipal residency restriction. The court of appeals reversed. Upon our review, we agree with the district court. We vacate the decision of the court of appeals and affirm the district court judgment.

## I. Background Facts and Proceedings

In 1980, the City of Dubuque issued an administrative policy that imposed a residency requirement for its employees. The policy required that

> persons hired after August 31, 1980, shall be, within six (6) months of the date of hire, residents of the State of Iowa and shall have their principal place of residence either within the corporate limits of the City of Dubuque or within 6.5 miles of the corporate limits of the City of Dubuque by the most direct street, road, or highway.

City of Dubuque, Administrative Policy No. 4.05 (Sept. 1, 1980), http://www.cityof dubuque.org/index. cfm?pageid=412. The policy was adopted after the Iowa legislature enacted a law that allowed cities in Iowa to "set reasonable maximum distances outside of the corporate limits of

the city that police officers, fire fighters and other critical municipal employees may live." Iowa Code § 400.17 (2001).

John Gotto was hired by the City of Dubuque after the policy was instituted. He resides in Epworth, Iowa, 7.2 miles outside the Dubuque corporate limits. It takes Gotto twenty-five minutes to drive from his home to work in normal driving conditions. He holds the position of Equipment Operator II in the Operations and Maintenance Department of the City. His job duties include operating a snowplow to remove snow and ice from city streets.

In April 2002, the Operations and Maintenance manager for the City sent a letter to Gotto informing him that he was in violation of the residency restriction. Gotto was told he would lose his job if he failed to comply with the requirement within a certain period of time.

In response to the notice, Gotto and his local union unsuccessfully pursued a grievance against the City. They then filed a declaratory judgment petition seeking a declaration that Gotto was not a "critical municipal employee" under Iowa Code section 400.17. Gotto also asked for a declaration that the residency requirement was facially invalid because it was not restricted to "critical municipal employees," but rather applied to all city employees.

Gotto and the City filed cross-motions for summary judgment. As a part of the summary judgment record, the Operations and Maintenance Department manager and the City Manager expressed their belief that Gotto was a critical employee. Gotto's supervisor explained that Gotto is one of eight back-up employees whose function is to fill in for the twenty-eight regular department employees in case of illness, injury, or other similar events. Moreover, Gotto is one of only six employees in the entire department who operates heavy snowplow equipment. There was evidence that Gotto had been called in to work on numerous occasions to clear snow and ice from the roads. In addition, both the police chief and the fire chief for the City of Dubuque stated that their personnel would be unable to timely respond to emergencies during snowstorms if the city streets were not cleared of ice and snow.

The district court denied Gotto's motion for summary judgment and granted the City's motion. The court determined that Gotto was a "critical municipal employee," but did not address the additional issue whether the City's policy was facially invalid. Gotto filed a notice of appeal without first filing a motion asking the trial court to specifically rule on the issue whether the City's policy was invalid on its face.

We transferred the case to the court of appeals. The court of appeals concluded Gotto was not a critical municipal employee. It reversed the judgment of the district court and remanded the case with instructions to enter summary judgment in favor of Gotto. We granted the City's application for further review.

## II. Standard of Review

■ " 'A declaratory judgment action tried at law limits our review to correction of errors at law. We are bound by well-supported findings of fact, but are not bound by the legal conclusions of the district court.' " *In re Estate of Tolson*, 690 N.W.2d 680, 682 (Iowa 2005) (quoting *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004)). Likewise, we review rulings granting summary judgment for correction of errors at law. *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005) (citing *In re Estate of Graham*, 690 N.W.2d 66, 69–70 (Iowa 2004)).

## III. Preservation of Error

██ We first address the claim by Gotto that the City policy is facially invalid because it applies to all city employees, rather than only "critical municipal employees." *See* Iowa Const. art. III, § 38A ("Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs in government....");  Iowa Code § 364.2(2) ("A City may exercise its general powers subject only to limitations expressly imposed by a state or city law."). Although Gotto presented this issue to the district court, the district court did not address it in its written decision, and Gotto did not file a motion to enlarge under rule 1.904(2). Generally, error is not preserved for appeal on an issue submitted but not decided by the district court when the party seeking the appeal failed to file a posttrial motion asking the district court to rule on the issue. *See In re Marriage of Okland,* 699 N.W.2d 260, 266 (Iowa 2005); *Meier v. Senecaut,* 641 N.W.2d 532, 538 (Iowa 2002).

██ Gotto argues the district court impliedly decided the municipal restriction was facially valid when it ruled that the policy applied to him. However, our preservation-of-error rule does not draw any such assumptions. Although we assume, for purposes of appellate review, that the district court considered and rejected all defenses to a claim on its merits when not specifically addressed in its ruling, this rule is inapplicable to our rule requiring error to be preserved. *Id.* at 539–40. Gotto was required to preserve error by filing a rule 1.904(2) motion when the district court failed to address the facial in-

validity issue. Accordingly, error has not been preserved.[1]

For the purposes of this appeal, we consider the City's residency policy to be limited by the "critical municipal employee" limitation under section 400.17. We therefore proceed to consider whether Gotto can be subject to the residency restriction as a "critical municipal employee."

## IV. "Critical Municipal Employee"

██ Disputes over the interpretation of a statute can arise even with the most carefully drafted laws. 2A Norman J. Singer, *Statutes and Statutory Construction* § 45:02, at 15 (6th ed. 2000) [hereinafter Singer]. Disputes arise because it is nearly impossible, even for the most thoughtful lawmakers, to anticipate all future circumstances and neatly corral them into communicative words. *Id.* Thus, it is a fundamental role, and duty, of courts to interpret statutes enacted by our legislature when particular disputes arise. *See Slockett v. Iowa Valley Cmty. Sch. Dist.,* 359 N.W.2d 446, 448 (Iowa 1984) ("[I]t is the fundamental prerogative of the legislature to declare what the law shall be, but of the courts to declare what it is." (Citation omitted.)); *accord Lynch v. Saddler,* 656 N.W.2d 104, 108 (Iowa 2003) ("In general, it is the legislature's duty to declare the law and the court's responsibility to interpret the law." (Citation omitted.)).

██ Courts have, over time, carefully crafted and refined rules of construction to help ascertain the legislative intent of a statute. *See State v. DeCamp,* 622 N.W.2d 290, 294 (Iowa 2001) ("In the absence of clear legislative intent, we turn to the rules of statutory construction." (citing *State v. Perez,* 563 N.W.2d 625, 628 (Iowa 1997)));

---

1. We also do not consider whether the 6.5–mile residency restriction under the City's policy is reasonable under section 400.17.

Singer § 45:02, at 13 ("Accepted rules of statutory construction can provide helpful guidance in uncovering the most likely legislative intent."). We apply these rules in resolving statutory disputes to attain our goal of interpreting statutes according to the intent of the legislature. *See Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.*, 606 N.W.2d 359, 363 (Iowa 2000) ("In interpreting the statute, our ultimate goal is to ascertain and give effect to the intent of the legislature." (citing *Iowa Fed'n of Labor AFL–CIO v. Iowa Dep't of Job Serv.*, 427 N.W.2d 443, 445 (Iowa 1988))). We begin in this case, as we do in all cases, with the language of the statute. *See* Singer § 47:01, at 208 ("The starting point in statutory construction is to read and examine the text of the act. . . .").

■■■ Iowa Code section 400.17 provides, in relevant part:

Cities may set reasonable maximum distances outside of the corporate limits of the city that police officers, fire fighters and other critical municipal employees may live.

Iowa Code § 400.17. Gotto claims the legislature intended the phrase "critical municipal employees" to cover only employees who regularly respond to emergency situations that threaten life or property, such as police and firefighters. The City claims the legislature intended the phrase to be broad enough to cover employees who operate snow-removal equipment. These claims illustrate the ambiguity in the statute presented by the circumstances of this case, and require us to interpret the statute.[2]

Neither the phrase "critical municipal employees," nor the term "critical," was defined by our legislature in the civil service statute or any other section of the Code. Additionally, we have not established the meaning of the phrase in our prior decisions.[3] Absent a definition by the legislature or an established meaning in the law, we have repeatedly said that "words in the statute are given their ordinary and common meaning by considering the context within which they are used." *Auen v. Alcoholic Beverages Div., Iowa Dep't of Commerce*, 679 N.W.2d 586, 590 (Iowa 2004) (citing *Midwest Auto. III*,

**2.** We have frequently said that we do not resort to the rules of construction when the terms of the statute are unambiguous. *Bankers Standard Ins. Co. v. Stanley*, 661 N.W.2d 178, 180 (Iowa 2003). "We do not search for meaning beyond the express terms of a statute when a statute is plain and its meaning is clear." *Cubit v. Mahaska County*, 677 N.W.2d 777, 781–82 (Iowa 2004). *See generally* Singer § 45:02.

**3.** Gotto asserts we implied that "critical" employees meant emergency responders in *Clinton Police Department Bargaining Unit v. City of Clinton*, 464 N.W.2d 875 (Iowa 1991). In that case, we rejected an equal protection challenge to a city's residency requirement for police officers by pointing out that the need to respond quickly to emergencies helps support a rational relationship to the residency requirement. *Clinton Police Dep't Bargaining Unit*, 464 N.W.2d at 878. Gotto also relies on

cases from other jurisdictions that have upheld residency requirements for police based in part on their unique role as emergency responders. *See Wadsworth v. State*, 275 Mont. 287, 911 P.2d 1165, 1176 (1996) ("It is true that cities may place police officers in a separate category and impose residence requirements on the officers because the duties and interests protected by police are of a sufficiently distinct character from those of other governmental employees."); *Seabrook Police Ass'n v. Town of Seabrook*, 138 N.H. 177, 635 A.2d 1371, 1374 (1993) ("[C]ourts cite various reasons for upholding the residency requirements for police officers, including quicker emergency response time which enhances community safety. . . ."). Yet, these cases do not establish a definition of a "critical" employee or support the position that a "critical" employee must be an emergency responder.

*L.L.C. v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 426 (Iowa 2002)); *accord Gen. Elec. Co. v. Iowa State Bd. of Tax Review*, 702 N.W.2d 485, 489 (Iowa 2005) (" 'Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.' " (quoting *Welp v. Iowa Dep't of Revenue*, 333 N.W.2d 481, 483–84 (Iowa 1983); citing *Gen. Elec. Co. v. Iowa State Bd. of Tax Review*, 492 N.W.2d 417, 420 (Iowa 1992))); *see also Worth County Friends of Agric. v. Worth County*, 688 N.W.2d 257, 263 (Iowa 2004) (stating when a term is not defined in the statute, " 'we look to prior decisions of this court, similar statutes, dictionary definitions, and common usage' " (quoting *Bob Zimmerman Ford, Inc. v. Midwest Auto. I, L.L.C.*, 679 N.W.2d 606, 609 (Iowa 2004))). We begin down the path of legislative intent with this rule of construction in mind.

In the context of describing a person, the dictionary definition of "critical" means essential, or "indispensable for the weathering, solution, or the overcoming of a crisis." *Webster's Third New International Dictionary* 538 (2002); *accord Merriam–Webster's Collegiate Dictionary* 275 (10th ed. 2002) ("vital, indispensable"). This meaning reveals that the phrase "critical municipal employee" is not limited to traditional emergency responders, but rather would encompass any employee who performs work that is essential or indispensable in responding to or dealing with any municipal crisis or potential crisis.

▬▬ Notwithstanding, the court of appeals identified another interpretive aid to support its conclusion that our legislature did intend to limit the phrase "critical municipal employee" to employees who regularly work as emergency responders. This aid of statutory interpretation is known as ejusdem generis.[4] It provides that when general words follow specific words in a statute, the general words are read to embrace only objects similar to those objects of the specific words. *Messerschmidt v. City of Sioux City*, 654 N.W.2d 879, 884 (Iowa 2002) (citing *Shatzer v. Globe Am. Cas. Co.*, 639 N.W.2d 1, 5 (Iowa 2001)); *accord Maxim Techs., Inc. v. City of Dubuque*, 690 N.W.2d 896, 902 (Iowa 2005); *Black's Law Dictionary* 535; Singer § 47:17, at 272–81. The rule recognizes and gives effect to both the specific and general words by using the class indicated by the specific words to extend the scope of the statute with the general words to include additional terms or objects within the class. *Id.* at 285.

▬▬ In using the doctrine as an interpretative aid, it is important to keep in mind that it is not applied in a vacuum, and disputes cannot be resolved by merely tying the issue "to the procrustean bed of *ejusdem generis.*" *United States v. Weadon*, 145 F.3d 158, 162 (3d Cir.1998). In fact, there are several conditions that have been identified for the doctrine to apply, but none more important than the identification of the class.[5] Classes can be de-

4. Ejusdem generis is Latin for "of the same kind or class." *Black's Law Dictionary* 535 (7th ed. 1999). It is an ancient doctrine, commonly called Lord Tenterden's Rule, dating back to *Archbishop of Canterbury's Case* in 1596. Singer § 47:17, at 272–73 (citation omitted).

5. There are five conditions that have been identified:

(1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

fined in a vast number of ways, but the key to unlocking the true value of the doctrine is to ensure that the identified class has some objective relationship to the aim of the statute. Singer § 47:18, at 289. In other words, the "basis for determining which among various semantically correct definitions of the class should be given effect" is found in the purpose and subject of the statute as revealed in the legislative intent. *Id.*

In this case, the court of appeals found the specific enumerations—police and firefighters—identified a class of emergency responders, or employees who respond quickly to emergencies that threaten life or property. While it is undeniably true that police and firefighters are both emergency responders, this classification lacks a connection to the residency of the employees. Consequently, the classification has a tenuous relationship to the purpose and intent of the statute. We think the germane feature of the class under the statute is not that the included employees respond to emergencies in the performance of their regular duties for the municipality, but that the employees in the class perform a critical function for the municipality that may require them to reliably and quickly respond from their residence to a community crisis or potential crisis. As a public safety measure, the statute ensures that critical employees will be able to promptly get to work in the event of an emergency or crisis.

In this light, not only is it important for employees who regularly respond to emergencies in their work to be able to quickly respond to a community crisis or potential crisis from their residence, but it is also important for employees who may not regularly respond to emergencies in their work but who nevertheless perform critical duties for the municipality in the event of a crisis or potential crisis. This feature is the essential element of the class in the context of the residency requirement imposed under the statute. An interpretation that restricts critical employees to emergency responders would not give full effect to the purpose and intent of the statute.

Once the class is properly tied to the subject and purpose of section 400.17, the doctrine of ejusdem generis reveals, as does the common meaning of the language of the statute, that critical employees are not limited to employees who regularly respond to emergencies, but includes all employees who must report to work from their homes at times to perform critical functions for a municipality in the event of a community crisis. We conclude our legislature did not intend to limit the class of critical municipal employees to emergency responders.

Notwithstanding, Gotto further argues that a snowplow operator is not a critical employee even if the statute includes employees other than emergency responders. He maintains, as the court of appeals found, that snowplow operators must no longer respond quickly to snow and ice storms in light of the advanced warning of storms provided by modern forecasting technology, as well as the modern anti-icing and snow-removal technology. We disagree that Gotto is not a critical employee for three reasons.

First, we reject the underlying premise relied upon by the court of appeals. While it may be possible for a court to take judicial notice of improved weather forecasting and the improved predictability of

---

*Id.* at 287; *see Metier v. Cooper Transp. Co.,* 378 N.W.2d 907, 912–13 (Iowa 1985) (doctrine inapplicable when there is no inconsistency between the general and specific language).

impending storms, the nature and severity of storms, and the precise location of storms in particular, remain very uncertain. A regional forecast of a few inches of snow can quickly turn into a substantial amount of snow or ice in a particular location within the forecast region.

Second, the undisputed evidence in the case was that Gotto has been called into work from his home to perform his snow-removal duties in the past. This evidence reveals Gotto is an indispensable component of a team of city employees that responds to crises and emergencies faced by the community. It is hard to imagine that a snowplow operator would not be a "critical municipal employee" in Iowa, in light of our dependence on travel and the need for our government to keep roads and streets open to facilitate travel during inclement winter weather at all times of the day and night. A snowplow is often the lifeline to winter travel. Indeed, it would be ironic to include regular emergency responders as critical employees but exclude those employees charged with the responsibility of keeping streets and roads open during snow and ice storms for emergency responders to perform their duties. We will not interpret a statute to reach an absurd result. *See State v. Petithory,* 702 N.W.2d 854, 859 (Iowa 2005) (stating we interpret statutes in a commonsense manner and avoid absurd results (citing *State v. Anderson,* 636 N.W.2d 26, 35 (Iowa 2001)); *Harrington v. State,* 659 N.W.2d 509, 520 (Iowa 2003)). That too is an interpretive aid that supports our conclusion that snowplow operators are "critical municipal employees" under section 400.17. As a public safety measure, we will not interpret section 400.17 too narrowly so as to undermine or jeopardize its purpose. Instead, we interpret statutes consistent with their purpose. *See IBP, Inc. v. Harker,* 633 N.W.2d 322, 325 (Iowa 2001) (stating we give statutes "'a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it'" (quoting *Voss v. Iowa Dep't of Transp.,* 621 N.W.2d 208, 211 (Iowa 2001))).

## V. Conclusion

The court of appeals interpreted "critical" too narrowly when it equated "critical municipal employees" with emergency responders. The concept of "critical" is broader and includes employees that are indispensable to the weathering of a crisis, such as John Gotto. We conclude John Gotto is a critical municipal employee under Iowa Code section 400.17. The decision of the court of appeals is therefore vacated, and the judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**