541 N.W.2d 543 (1995)
In re ESTATE OF William LACHMICH.
Donna IRELAND, Denise Marin, David McNichols, Diana Johnson and Debbie Sarna, Plaintiffs,
Patricia Merlina, Appellant,
v.
Bernetta LACHMICH, Maril Simpson, Frieda Underwager, Joan Rassmussen, and Cresco Union Savings Bank, Defendants-Appellees.
No. 94-0415.
Court of Appeals of Iowa.
October 31, 1995.
*544 Dale L. Putnam of Putnam & Strand Law Office, Decorah, for appellant.
Dennis G. Larson of the Larson Law Office, Decorah, for appellees.
Heard by DONIELSON, C.J., and HAYDEN and CADY, JJ.
HAYDEN, Judge.
The deceased, William Lachmich, was born in 1902. He married Lila McNichols in 1936. In 1974 he adopted Donald George McNichols and Patricia Dawn Merlina, adult children from Lila's previous marriage. Lila died in 1981. On April 16, 1982, William executed a will leaving all of his property to Donald and Patricia.
On May 30, 1984, William and Bernetta Burgess executed a prenuptial agreement. They were married on June 17, 1984. On June 21, 1984, William executed a will leaving one-third of his estate to Bernetta, one-sixth to two nieces, and one-sixth to both Patricia and Dorothy McNichols, Donald's surviving spouse. William died on September 16, 1992. The will was probated, and an action to set aside the will on grounds of undue influence and testamentary capacity was filed on January 25, 1993.
Two issues were presented at trial. First, the parties argued over whether Bernetta had exercised undue influence over William concerning the execution of his 1984 will. Secondly, the parties argued regarding the testamentary capacity of William at the time he executed the 1984 will.
At trial, Patricia argued William had been suffering from Alzheimer's disease since 1979, and the disease steadily progressed throughout his life. Allegedly, in 1984, he suffered from the end of the middle stages and the beginning of the final stages of the disease. She noted, during this period of time, William got lost while walking to familiar places, had delusions about people stealing from him, and forgot numerous appointments despite being provided with an agenda. Patricia argued William was diagnosed as delusional in 1986, indicating William was suffering from the final stages of the disease. Patricia also noted William, in his will, identified her as "Patricia McNichols" and not by her married name; additionally, he referred to Patricia and Donald as his "stepchildren" rather than his children by adoption. According to Patricia, this evidence proved, to a reasonable degree of medical certainty, the disease had progressed to the extent William did not have testamentary capacity when he executed the 1984 will.
Patricia also argued Bernetta exercised undue influence over William in the execution of his will. She argued undue influence must have been exerted because, only one week before their marriage, William and Bernetta signed a prenuptial agreement. According to Patricia, William would not have changed his mind concerning the prenuptial agreement and included Bernetta in his will unless Bernetta exerted undue influence over him. She further argued William was susceptible to undue influence because of his medical condition, Bernetta had the opportunity to exercise undue influence over William, and Bernetta was disposed to influence unduly for the purpose of procuring an improper favor.
*545 Bernetta offered the testimony of numerous witnesses who had known William for many years. These witnesses testified they had seen or conversed with William during the period surrounding the execution of the 1984 will, and he seemed very alert and knowledgeable about his property. Additionally, Dr. Peter Kepros, William's physician until 1992, testified he saw no signs or evidence of Alzheimer's until 1986. He stated he examined William five months before the execution of the 1984 will and noted no dementia.
The district court concluded William had sufficient testamentary capacity when he executed the 1984 will. The district court also determined Patricia had failed to show Bernetta had exerted undue influence over William. Consequently, the petition to set aside the will was dismissed. Patricia has appealed. Patricia presents the same arguments asserted at the district court level.

I. Standard of Review.
The standard of review in this case is for errors at law. Pearson v. Ossian, 420 N.W.2d 493, 495 (Iowa App.1988). Findings of facts in a law action are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We construe the trial court's findings broadly and liberally. Grinnell Mut. Reins. Co. v. Voeltz, 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the judgment. Id. We are prohibited from weighing the evidence or the credibility of the witnesses. Id.
A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.
Briggs Transp. Co. v. Starr Sales Co., 262 N.W.2d 805, 808 (Iowa 1978).
"Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." Waukon Auto Supply v. Farmers & Merchants Sav. Bank, 440 N.W.2d 844, 846 (Iowa 1989) (citation omitted). Evidence is not insubstantial merely because it could support contrary inferences. Grinnell Mut. Reins. Co., 431 N.W.2d at 785 (citation omitted).
With these principles in mind, we turn to the issues raised on appeal. As stated above, Patricia makes two arguments. First, Patricia argues the court erred in finding William Lachmich possessed testamentary capacity. She argues William failed to remembered the natural objects of his bounty and did not know the disposition he desired to make under his last will and testament. Second, Patricia argues the trial court erred in finding William's testamentary disposition was not the result of undue influence. She believes Bernetta Lachmich was disposed to unduly influence William in order to improperly procure favors.

II. Testamentary Capacity.
In order for William to have had general testamentary capacity when he executed the 1984 will, William must have known and understood: (1) The nature of the instrument being executed; (2) The nature and extent of his property; (3) The natural objects of his bounty; and, (4) The disposition he desired to make under his last will and testament. Patricia argues the above elements were not met because (1) William did not remember the natural objects of his bounty and (2) William did not know the disposition he desired to make under his last will and testament. We determine the trial court did not err in finding William possessed testamentary capacity to execute the 1984 will.
There is substantial evidence in the record supporting the district court's conclusion William did remember the natural objects of his bounty. In arguing to the contrary, Patricia places significance on the fact William referred to her as his "stepchild" despite the fact he had adopted her when she was forty-four years old. Additionally, she deems it significant the will referred to her by her maiden name rather than her married name. Selection of these words could easily have been a mistake by the attorney drafting the will or, as appellee's counsel suggest, selection of these words could have been an *546 attempt to properly comply with the law. Regardless, William's reference to his adopted children as "stepchildren" and use of Patricia's maiden name do not indicate William was incoherent or did not know the natural objects of his bounty. To the contrary, including in his will his surviving adopted child and the wife of his deceased adopted child indicates William did remember the natural objects of his bounty.
Additionally, there is substantial evidence in the record supporting the district court's conclusion William knew and understood the disposition he desired to make of his property in the 1984 will. In a medical exam conducted in February 1984, five months before execution of the will, William's doctor opined William was mentally clear and had no dementia. The doctor held these same opinions on October 1, 1985. Evidence indicates serious problems with William's memory did not occur until 1986. Although Patricia argues William suffered from Alzheimer's and did not understand the disposition he desired to make when he executed his will in 1984, much of the evidence indicates otherwise.
We determine the trial court did not err in finding William had sufficient testamentary capacity at the time he executed his 1984 will. There is substantial evidence he understood the object of his bounty and knew the disposition he desired to make in his will. We affirm.

III. Undue Influence.
In his 1984 will, William made a specific bequest of $1000 to his sister Frieda Underwager. The remainder of the estate was bequeathed as follows: (1) One-third to his wife, Bernetta Lachmich; (2) One-sixth to his niece, Maril Simpson; (3) One-sixth to his niece, Joan Rasmussen; (4) One-sixth to his "stepdaughter," Patricia McNichols; and (5) One-sixth to Dorothy McNicols, the surviving spouse of William's deceased "stepson," Donald McNichols.
In order to sustain a finding of undue influence in the execution of a William's will, Patricia must prove: (1) William was susceptible to undue influence; (2) Bernetta had the opportunity to exercise undue influence and effect the wrongful purpose; (3) Bernetta had a disposition to influence unduly to procure an improper favor; and, (4) the result, reflected in William's will, was clearly the effect of undue influence. In re Estate of Davenport, 346 N.W.2d 530, 532 (Iowa 1984). Although the first two elements might have been met, the third and fourth elements were not met. We agree with the trial court's conclusions with regards to this issueBernetta was not disposed to influence unduly to procure an improper favor, and the result was not clearly the effect of undue influence.
Patricia alleges, since a prenuptial agreement was entered shortly before the will was written, the will must have been the result of undue influence. To the contrary, however, witnesses testified William requested a paragraph be added to the prenuptial agreement allowing him to will property to Bernetta if he so wished. Patricia also argues William would not have changed his mind about his previous will which was written before his second marriage unless undue influence was exerted by Bernetta. We, however, find this assumption unpersuasive.
As to element four, the distribution of William's property does not appear to be the result of undue influence. Under the circumstances, the distribution appears quite fair. William's wife of nearly eight years received one-third of his estate while his two children, who were not adopted until well into their adulthood, similarly received a combined amount of one-third of his estate.
The trial court did not err in finding William's 1984 will was not the result of undue influence. There is no evidence Bernetta was disposed to unduly influence William, and the distribution itself is not clearly the result of undue influence. We affirm.

IV. Conclusion.
The district court held Patricia failed to prove, by a preponderance of the evidence, any grounds for setting aside the last will and testament of William Lachmich. Although Patricia makes arguments too numerous to mention in this opinion, we have carefully evaluated the record and briefs prepared *547 by each party and determine the trial court did not err in dismissing Patricia's petition. We affirm.
AFFIRMED.