**IN THE COURT OF APPEALS OF IOWA**

No. 17-0430
Filed July 18, 2018

**IN THE MATTER OF THE ESTATE OF LOIS B. ERICKSON, deceased.**

**WAYNE ERICKSON,**
        Plaintiff-Appellant,

**vs.**

**ALAN D. ERICKSON, MARY ANN WARD, LEAH ERICKSON, LISAH ERICKSON, COOPER WARD, LUKE ERICKSON AND LAUREN ERICKSON and ALL UNKNOWN AND UNBORN BENEFICIARIES,**
        Respondents-Appellees.
_____

Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.


Wayne Erickson appeals a ruling finding his mother's 2011 will invalid based on undue influence and lack of testamentary capacity and finding him liable for tortious interference with a bequest. **AFFIRMED.**


Patrick J. Riley and Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Amanda L. Green of Nading Law Firm, Ankeny, for appellee Estate of Lois B. Erickson.

Kevin Cunningham of Cunningham & Kelso, P.L.L.C., Urbandale, for appellees Unknown and Unborn Beneficiaries.

Matthew G. Sease of Kemp & Sease, Des Moines, for appellees Mary Ann Ward, Cooper Ward, and Christina Ward.

Heard by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

An heir to his mother's estate contends the district court erred in (1) finding him liable for intentional tortious interference with a bequest, (2) assessing all the estate's attorney fees against his share of the estate, (3) denying his motion to continue, (4) precluding him from testifying as a discovery sanction, and (5) finding a 2011 will invalid based on lack of testamentary capacity and undue influence.

## I. *Background Facts and Proceedings*

Lois Erickson executed two wills before she died in 2015—one in 2010 and another in 2011. Her 2010 will divided her estate equally among her three children—Wayne Erickson, Alan Erickson, and Mary Ann Ward. Her 2011 will left the vast majority of the estate to Wayne.

Lois' home and living conditions deteriorated over time. Alan and Mary Ann petitioned for the appointment of a guardian and conservator. On learning of the petition, Wayne had a codicil to the 2011 will drafted. The codicil provided that anyone who contested the 2011 will "shall reimburse my son, Wayne D. Erickson, at the rate of $1,500.00 per hour." Lois signed the codicil two days before a guardianship/conservatorship hearing and gave Wayne power of attorney one day before the hearing.

Wayne contested the appointment of a guardian and conservator and objected to a medical evaluation of Lois. The physician who evaluated her diagnosed "moderate to severe" Alzheimer's. The court ordered Alan to serve as Lois' guardian and named a bank as conservator.

After Lois died, Alan filed a petition to probate the 2010 will. The court admitted the 2010 will to probate. Two months later, Wayne filed a "petition to set

aside probate of [the 2010] will and declaratory judgment to determine last will." Wayne asserted, "[T]he [2010 will] is not the most recent Last Will and Testament of Lois B. Erickson. The [2011 will] is the Last Will and Testament of Lois Erickson and as such should be the Will being administered and probated." Mary Ann and her two children filed a counterclaim against Wayne for tortious interference with a bequest.

The parties stipulated the issue for trial was the validity of the 2011 will. The stipulation was memorialized in a court order. Following a bench trial, the district court found the 2011 will invalid based on undue influence and lack of testamentary capacity. The court also found Wayne liable to Mary Ann and her children for tortious interference with a bequest. Finally, the court ordered Wayne to pay all of the estate's attorney fees from his share of the estate. Wayne appealed.

## II. Tortious Interference with Bequest

"One who by fraud or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he [or she] would otherwise have received is subject to liability to others for the loss of the inheritance or gift." *Huffey v. Lea*, 491 N.W.2d 518, 520 (Iowa 1992) (quoting Restatement (Second) of Torts, § 774B (1979)). A plaintiff alleging tortious interference with a bequest must show the defendant acted with tortious intent. *See id.* at 521 ("The necessary proof in an action for intentional interference with a bequest or devise focuses on the fraud, duress, or other tortious means intentionally used by the alleged wrongdoer in depriving another from receiving from a third person an inheritance or gift."); *In re Estate of Boman*, No. 16-0110, 2017 WL 512493, at *10 (Iowa Ct. App. Feb. 8, 2017) (requiring a showing defendants acted "intentionally

and improperly" in interfering with plaintiff's expected inheritance). We review a finding of tortious interference with a bequest for substantial evidence. *Boman*, 2017 WL 512493, at *11.

Wayne contends the district court simply found he exerted undue influence over Lois and a finding of undue influence was insufficient to support liability for intentional interference with bequest. We agree undue influence is not coextensive with tortious interference. As the court explained in *Huffey*, the former "focuses on the testator's mental strength and intent" while the latter "focuses on the fraud, duress, or other tortious means used by the alleged wrongdoer." 491 N.W.2d at 521.

Although the district court did not explicitly determine Wayne acted by "fraud, duress, or other tortious means," the court's detailed fact findings were an effective equivalent. *See Hubby v. State*, 331 N.W.2d 690, 695 (Iowa 1983) (stating "[f]indings of fact are given a liberal construction favorable to the judgment" and "we assume as fact an unstated finding that is necessary to support the judgment"). The court found that, four days before the drafting of the 2011 will, Wayne and Lois called Lois' lawyer, told him Alan was guilty "of breaking into Lois' safe and stealing several items," and told him to draft a new will divesting Alan of any share of the estate. The court further found the lawyer "primarily spoke with Wayne" and directed him to report the theft matter to law enforcement authorities. The court found "[t]he Boone County Sheriff's office investigated the matter, but did not find any evidence of a theft." Meanwhile, the lawyer "drafted a completely new will," which "left all of the farm ground to Wayne and the residue to Wayne and Mary Ann." The will was signed a month after the phone call. The court found

"Wayne continued his control over Lois" following the signing. Specifically, he called the police to investigate Mary Ann and prohibited her from taking Lois to two events. On our review of the record, we discern the following evidentiary support for the district court's findings.

The attorney who drafted the 2011 will testified Wayne called and said "oh, somebody stole something from my mom, and she's really upset about it." The attorney elaborated, "[Lois and Wayne] called me. They both were pretty rattled. They said Alan broke into Lois and Arlo's home and stole some stuff out of the safe that was downstairs." According to the attorney's notes, Wayne and Lois informed him the titles to cars and trucks, deeds, and other documents were missing, together with a large diamond ring "worth thousands of dollars." Although the attorney testified both Lois and Wayne were on the phone call, he admitted Wayne did all the talking. In his words, "Lois was very quiet. She probably didn't do any talking."

The lawyer testified, "In the meantime Lois wants to do a new will and cut out Alan entirely." The attorney stated he drafted the changes to the will in short order and Lois executed the will.

The attorney's testimony about Wayne's accusation against Alan was corroborated by Alan. Alan testified to Wayne's overall controlling behavior when it came to his mother. As an example, he said he had phone conversations with Lois in which he overheard Wayne "coaching her what to say." He stated, Wayne was "very aggressive" and "very outspoken" in directing his mother's communications.

A law enforcement officer confirmed Wayne's accusation of theft. He testified he went to Lois' home and "tried to" talk with her, but every time he "would ask her a question, Wayne would interrupt." He stated it seemed as if Wayne was trying to prevent Lois from communicating with him. The officer called Alan to obtain additional information. He ultimately concluded there was no evidence to "proceed further."

Mary Ann testified to Wayne's controlling behavior after the 2011 will was signed. She cited Wayne's refusal to let her take Lois for a manicure, his accusation she was "stealing items from [her] mother," his assertion that his mother did not trust her, and his call to 911 accusing her of theft. When an officer arrived at Lois' home to investigate the assertion, Mary Ann told him she was simply there to take her mother out. She encouraged the officer to check her trunk for allegedly stolen items. She testified "that was that." Like Alan, she said Wayne's presence when she telephoned her mother resulted in a change in her mother's "tone of voice" and shorter answers. In Mary Ann's words, Lois "just kind of wanted to end the call."

Substantial evidence supports the district court's findings and the court's implicit determination of Wayne's tortious intent to interfere with the bequest to his siblings. Accordingly, we conclude the district court did not err in finding in favor of the Wards on their tortious-interference-with-a-bequest claim. We affirm the court's award of consequential damages to the Wards in the form of attorney fees incurred in defending the action filed by Wayne. *See Huffey*, 491 N.W.2d at 522 ("We are strongly committed to the rule that attorney fees are proper consequential damages when a person, through the tort of another, was required to act in

protection of his or her interest by bringing or defending an action against a third party.").

### III. Attorney Fees to Executor

Iowa Code section 633.315 (2015) authorizes an executor to recoup reasonable attorney fees:

> When any person is designated as executor in a will, or has been appointed as executor, and defends or prosecutes any proceedings in good faith and with just cause, whether successful or not, that person shall be allowed out of the estate necessary expenses and disbursements, including reasonable attorney fees in such proceedings.

A probate court is granted considerable discretion in taxing fees. *In re Estate of Wulf*, 526 N.W.2d 154, 158 (Iowa 1994). Where the fees are assigned to the objector's share of the estate, the question is whether the objector acted in bad faith. *Id.*; *cf. Swartzendruber v. Lamb*, 582 N.W.2d 171, 176-77 (Iowa 1998) (applying "good faith and just cause" test in section 633.315 to executor proponent of a will who was also a real party in interest and was unsuccessful in upholding the validity of the will, and affirming conclusion that executor could not charge costs to estate because he exerted undue influence over decedent).

The district court assessed all of the estate's attorney fees—$47,880.93—against "Wayne's share of the estate." In doing so, the court reasoned,

> The fees were necessary and reasonable based upon Wayne's action in challenging the 2010 will. The court considered reducing the Estate's fees based on the use of two attorneys at trial. The Court decided that it would assess both attorneys' fees to Wayne. There was significant money involved in this case which would justify the use of two attorneys. Additionally, Wayne had two attorneys at trial representing his interest.
> In the court's view, Wayne's conduct in attempting to probate the 2011 will justifies the assessment of the attorney fees as indicated herein. Wayne clearly was just trying to get a significantly

bigger share of the estate. His conduct in exerting undue influence and then trying to get the 2011 will probated is based on nothing but greed.

. . . .

Wayne has been domineering and controlling of his mother for years. His conduct justifies the assessment of attorney fees as indicated appropriate in this ruling.

Wayne appeals the assessment of the estate's fees solely against his share of the estate. He argues the court's assessment was unduly harsh because "[his] claim cannot be said to be frivolous nor made in bad faith."

To the contrary, the record is replete with evidence of bad faith, some of which we have recounted above. Although the court did not use the term "bad faith," the court cited Wayne's "greed" and his "domineering and controlling" behavior. These characterizations are indicative of bad faith. We conclude the district court did not abuse its discretion in assessing the executor's attorney-fee obligation against Wayne's share of the estate.

## IV. *Wayne's Motion to Continue*

Twenty-two days before trial, Wayne moved to continue trial, arguing the 2010 will was invalid because of undue influence and lack of testamentary capacity. Wayne asserted he needed more time "to fully develop the evidence showing the invalidity of the 2010 will." The district court denied the motion. The court reasoned (1) Wayne's petition did not assert the 2010 will was invalid, (2) "the parties agreed the issue to be decided at trial [was] whether the 2011 Will [was] invalid due, in part, to undue influence," (3) "the deadline for pleadings of that nature [had] passed," and (4) the "trial date should not be continued this close to the trial date that was set one year in advance."

On appeal, Wayne contends the defendants had "adequate notice" of his intent to challenge the 2010 will on the stated grounds and he should have been afforded additional time to develop this challenge. Our review of the court's denial of the continuance motion is for abuse of discretion. *In re Estate of Lovell*, 344 N.W.2d 576, 578 (Iowa Ct. App. 1983).

We discern no abuse. Wayne's petition made no mention of a challenge to the 2010 will based on undue influence or lack of testamentary capacity. The petition simply stated, "[T]he [2010 will] is not the most recent Last Will and Testament of Lois B. Erickson. The [2011 will] is the Last Will and Testament of Lois Erickson and as such should be the Will being administered and probated." Additionally, in interrogatories, Wayne was asked "whether or not [he was] claiming that any person unduly influenced Lois B. Erickson." He responded "none." Wayne was also asked "whether or not [he believed] Lois B. Erickson was susceptible to being influenced regarding his Last Will and Testament." He responded, "No." And, as noted, the district court clarified that the issue for trial was whether the 2011 will—not the 2010 will—was "invalid due, in part, to undue influence." Finally, Wayne's belated attempt to inject a new issue so close to the trial date was unfair to the other parties, particularly where Wayne was aware of the potential claim from the outset. *See Scott v. Grinnell Mut. Reins. Co.*, 653 N.W.2d 556, 561 (Iowa 2002) ("Principles of fairness . . . dictate notice of the claims asserted in order to give the opposing party opportunity to make an adequate response."); *see also In re Estate of Workman*, 903 N.W.2d 170, 178-79 (Iowa 2017) (affirming denial of an amendment "to add the prior wills and codicil to [the] undue influence claim" because the movant "knew of the prior wills long before"

and also knew about any evidence of undue influence long before he proposed the amendment). We affirm the district court's denial of the continuance motion.

## V. Discovery Sanction

Wayne failed to appear for a deposition on two separate occasions. As a sanction for his nonappearance, the defendants moved to dismiss his action. The district court found Wayne's failure to appear following ten mailed notices was willful. Nonetheless, the court found dismissal to be too harsh a sanction and opted for two lesser sanctions. First, the court stated Wayne would "not be permitted to testify on his own behalf at trial." Second, the court ordered Wayne "to pay all attorney fees and court reporter costs incurred based on his failure to appear for depositions."

On appeal, Wayne contends the court's refusal to allow him to testify amounted to an abuse of discretion. *See Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 14 (Iowa 1977) (setting forth standard of review). We disagree.

Iowa Rule of Civil Procedure 1.517(4) authorizes the imposition of sanctions for failure to appear at a deposition. One of the possible sanctions is "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing designated matters in evidence." Iowa R. Civ. P. 1.517(2)(b)(2).

The sanction of excluding Wayne's testimony was entirely appropriate, for the reasons stated by the district court. *See id.*; *see also Farley v. Ginther*, 450 N.W.2d 853, 856 (Iowa 1990) (upholding district court's exclusion of expert testimony because of party's failure to abide by discovery order); *Sullivan v.*

*Chicago & N.W. Transp. Co.*, 326 N.W.2d 320, 324 (Iowa 1982) (same). We affirm the district court's ruling.

## VI.     *Invalidity of 2011 Will*

The district court determined Lois lacked testamentary capacity when she executed the 2011 will and the will was the product of undue influence. Wayne argues these determinations are not supported by substantial evidence. *See In re Estate of Lachmich*, 541 N.W.2d 543, 545 (Iowa Ct. App. 1995) (setting forth standard of review). We begin with the district court's detailed fact findings on each issue.

On the question of Lois' testamentary capacity, the court cited the physician's diagnosis of severe Alzheimer's disease, the physician's view that Lois could not make any major decisions on her own, and his ability to "very confident[ly] opine as to Lois' mental capabilities" at the time she executed the 2011 will. The court quoted the physician's testimony, pointed out that "[n]o other medical person[nel] testified," and stated other individuals were not called "to rebut [the physician's] medical diagnosis." The court stated, "Based upon [the physician's] undisputed testimony, it is clear that Lois was medically and legally incapable of knowing a will was being made, knowing 'the natural objects of [her] bounty,' or the true 'distribution [she] desires to make of [her] property.'" (quoting *Pearson v. Ossain*, 420 N.W.2d 493, 495 (Iowa Ct. App. 1988)). The court concluded the 2011 will was invalid.

As to undue influence, the court found "[w]ithout question" that Lois "was susceptible to undue influence." The court cited her medical diagnosis "that extended into the relevant time periods of the April 2011 Will formation," the effect

of the diagnosis on "her executive functioning," her age, her dependence on others "for her general basic necessities and travelling," and her other medical conditions that made ambulation difficult. The court next turned to Wayne's opportunity to exercise undue influence and found "this element is really not in dispute." The court also found the record "replete" with evidence Wayne was inclined to influence Lois unduly to gain an improper favor. The court cited his attempt to force Alan out of a meeting with an attorney, his placement of signs around Lois' home "establishing visiting hours and precluding other family members from visiting Lois," and his possession of one of two keys to the house. Next the court summarized the evidence indicating Lois "acted like a completely different person when away from Wayne," evidence showing Wayne "controlled the conversations and did most of the talking" with Lois' attorney, and evidence of his continued control over Lois after the 2011 will was executed. Addressing the final element of an undue influence claim—whether the will was "clearly brought about by undue influence"—the court cited "the dramatic difference between" the two wills and the attorney's testimony that the 2011 will was the product of Wayne's influence.

No useful purpose would be served by summarizing the extensive evidence supporting the district court's findings. Suffice it to say the findings and determinations of lack of testamentary capacity and undue influence are supported by substantial evidence and the court's legal analysis was correct. *See Burkhalter v. Burkhalter*, 841 N.W.2d 93, 99-105 (Iowa 2013) (discussing elements of undue influence claim and declining to abandon the "clearly" requirement of causation). We affirm the court's conclusion that the 2011 will was invalid.

**AFFIRMED.**