**IN THE COURT OF APPEALS OF IOWA**

No. 18-1923
Filed October 9, 2019

**IN THE MATTER OF THE ESTATE OF**
**ELLEN P. VAN GINKEL, Deceased.**

**JOSEPH G. VAN GINKEL III and ELIZABETH A. WINTERHALTER,**
        Plaintiffs-Appellants,

**vs.**

**JENNIE L. KRONTHAL,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Craig E. Block, Associate Probate Judge.

        The plaintiffs appeal from the adverse summary judgment ruling in this will contest.  **AFFIRMED.**

        Jason S. Rieper of Rieper Law, P.C., Des Moines, for appellants.

        Kevin J. Driscoll and Andrew T. Patton of Finley Law Firm, P.C., and Seth Ryan Delutri of Bradshaw, Fowler, Proctor & Fairgrave, PC, Des Moines, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Joseph G. Van Ginkel III ("Joe") and Elizabeth Winterhalter ("Elizabeth"), two of Ellen Van Ginkel's ("Ellen") six children, contested Ellen's will, asserting: (1) Ellen lacked testamentary capacity to make the November 13, 2013 fourth codicil to her will, and (2) the will was a result of the undue influence of their sibling, Jennie Kronthal ("Jennie"). The district court entered summary judgment dismissing their claims. Joe and Elizabeth (collectively "the plaintiffs") appeal, contending the district court abused its discretion in considering police reports and an untimely-disclosed letter. They also assert the court erred in concluding they failed to present sufficient evidence to go to a jury on the questions of Ellen's lack of testamentary capacity or undue influence. Finding summary judgment proper, we affirm.

**I. Background Facts.**

Ellen was married to her husband Joseph G. Van Ginkel Jr. ("Gerry") in 1950. Ellen and Gerry had six children: Joan, Valerie, Elizabeth, Joe, Tamara, and Jennie. On March 31, 1995, Ellen executed her original Last Will and Testament.

Elizabeth "disengaged" from her family for several years beginning around 1996. Elizabeth did visit her parents in Iowa in 2005 (to help Ellen "with her hip") and in 2010 (to help Ellen "with her cancer").

In July 2010 and early November 2011, police were called to Ellen and Gerry's home to investigate reports Joe assaulted Gerry.

On November 16, 2011, Ellen executed a first codicil, removing Joe as the executor and replacing him with Jennie. Other than the change of executors, the first codicil ratified, confirmed, and republished Ellen's 1995 will.

In August 2012, Ellen and Gerry were both in ill health and moved to Maryland. They lived with Jennie and her family for about two months and then moved into their own apartment near Jennie. Elizabeth lived in Arlington, Virginia, at the time.

On December 18, 2012, Ellen executed a second codicil, which deleted the dispositive provisions from Ellen's 1995 will and, instead, included a new provision leaving her assets to the Ellen P. Van Ginkel Trust she had created in August 2012. The codicil also states: "As amended by this Codicil, I hereby ratify, confirm and republish my Last Will and Testament dated March 31, 1995 and my First Codicil to Last Will and Testament of Ellen P. Van Ginkel dated November 16, 2011."

Gerry died in January 27, 2013.

On March 6, 2013, Ellen executed the third codicil exercising her power of appointment granted to Ellen in Gerry's will, directing the assets from Gerry's Trust be paid into Ellen's Trust, to be administered according to its terms. Again, the codicil "ratif[ied], confirm[ed,] and republish[ed]" Ellen's 1995 Will and the first and second codicils.

On November 15, 2013, Ellen's primary care physician since October 2012, Dr. Veronica DiFresco, was asked to witness the execution of a fourth codicil. After a forty-five minute examination in which Dr. DiFresco confirmed Ellen was aware of her children and property and had knowledge of the effect of a will, Dr. DiFresco determined Ellen had testamentary competency on November 15, 2013, and that

Ellen understood what she was signing. Ellen then executed the fourth codicil, by which she again exercised the power of appointment granted to her in Gerry's will and directing the following distributions: $50,000 to granddaughter Carolyn Thomas; $25,000 to grandson James Jae Brown; $25,000 to grandson Andrew Allen Brown; and the balance to be divided equally between Tamara and Jennie. The fourth codicil ratified, confirmed, and republished Ellen's 1995 will and the first, second, and third codicils. This codicil effectively excluded Joe and Elizabeth from Ellen's will.

Ellen died on January 9, 2016. On March 7, 2016, notice of probate, appointment of executor, and the last will and testament and trust documents were dispatched to all of Ellen's heirs. On July 8, 2016, the plaintiffs filed a petition to set aside the will,[1] alleging Jennie exercised undue influence on Ellen and that Ellen lacked testamentary capacity to execute the changes to her will.

Jennie filed a motion for summary judgment, a statement of undisputed facts, and supporting documents. The plaintiffs resisted, relying on medical records and personal accounts from the period of 2011 to 2014. Jennie filed a reply brief and a response to plaintiffs' facts, which included Attachment DD, a three-page letter authored by attorney Jonathan Kramer on November 9, 2011, and addressed to Ellen and Gerry. The plaintiffs moved to strike the letter as

---

[1] The petition did not list a challenge to Ellen's trust itself, nor did plaintiffs file against Jennie in her capacity as trustee within one year. The plaintiffs also admit that they "are not contesting the trust, per se" but rather challenge whether Ellen had the capacity to make the changes that established the trust and funded it. On July 13, 2017, the probate court entered an "Order Interpreting Trust," which held Elizabeth and Joe are barred and forever precluded from challenging, contesting, or overturning Ellen's Trust because they failed to timely file a petition or claim, as required by Iowa Code section 633A.3110 (2017). That order was not appealed.

untimely produced. They also argued the court should not consider the proffered police reports because they were hearsay.

On October 3, the court granted summary judgment to Jennie. With respect to the claim that Ellen lacked testamentary capacity, the district court noted "direct evidence provided by a neutral medical practitioner [Dr. DiFresco] tending to show competency is a high hur[d]le for Plaintiffs to overcome."

The court noted the plaintiffs' circumstantial evidence had a number of problems:

> First of all, as pointed out in the expert witness reports, Ellen's primary cognitive disruptions were transitory in nature. Delirium, unlike its progressive relative dementia, represents a temporary dip in cognitive functioning, usually as a result of temporary biological or psychological events. In Ellen's case, this appeared to be the result of her depression and blood pressure issues. Both of these appeared to be addressed or have resolved prior to signing the fourth codicil. Likewise, the plaintiffs' expert witness claimed that Ellen was completely dependent on [Jennie], but Ellen was able to dress, care for, and feed herself. [Ellen also had a person who came to her home to help care for her and drive her.] There also exists contradictory evidence in medical records, including the assessment by [treating psychiatrist] Dr. [Allan] Berger that Ellen had full testamentary capacity months prior to her signing the fourth codicil. The "mild, mild, mild early dementia," which was only ever discussed by Dr. Berger, is no different than the capacity that "50% of the American population in her age group" experiences. The defense also produced a number of statements by other observers claiming that Ellen was of sound mind during the applicable time period. Finally, there is little to no evidence that the distribution of the will was "unnatural." Both plaintiffs had been alienated from Ellen by their own actions . . . .

The court concluded that while there was medical evidence Ellen had periods of ill health,

> because Ellen had good days and bad days, evidence of an alleged incapacity on one particular date is irrelevant (i.e., does not allow an inference one way or the other) to Ellen's capacity on a different date. Accordingly, in order to survive summary judgment, plaintiffs must

set forth specific, admissible evidence of Ellen's capacity on the date —and at the time—the fourth codicil was executed, namely November 15, 2013. Construing the available evidence in the light most favorable to the non-moving party, there simply is not sufficient evidence to establish a claim that Ellen lacked capacity. Plaintiffs admitted that Ellen's capacity was good some days and bad other days, as opposed to all bad days. Any evidence plaintiffs have produced is refuted by [Jennie], and is insufficient to overcome the direct evaluation of Ellen at the time of signing the fourth codicil. Ellen did not lack capacity on November 15, 2013, when she signed the fourth Codicil to her Last Will and Testament.

Similarly, the court observed the plaintiffs had presented inadequate evidence to support their claim of undue influence.

The plaintiffs filed a motion to amend or enlarge, urging the court to address their motion to strike the attorney letter. However, the district court had not ruled on the motion when Joe and Elizabeth appealed.

On appeal, the plaintiffs contend the district court abused its discretion in not striking the untimely-disclosed letter and in considering the July 2010 and November 2011 police reports. They also assert the court erred in concluding they failed to present sufficient evidence of Ellen's lack of testamentary capacity or undue influence to go to a jury.

**II. Scope and Standard of Review.**

We review evidentiary rulings for an abuse of discretion, which occurs when the district court bases its ruling on grounds that are unreasonable or untenable. *See Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014).

We review the grant of summary judgment for correction of legal error. *In re Estate of Graham*, 690 N.W.2d 66, 69–70 (Iowa 2004). The district court must render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "We are obliged to view the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences." *Graham*, 690 N.W.2d at 70.

## III. Analysis

*A. Motion to strike.* The plaintiffs contend the district court abused its discretion in not granting their motion to strike, on which they sought a ruling in their October 17, 2018 motion to amend or enlarge. Jennie resisted the motion. The district court did not rule on the motion to enlarge before the plaintiffs filed their notice of appeal. By appealing, they waived the issue. *See Freer v. DAC, Inc.*, 929 N.W.2d 685, 687–88 (Iowa 2019) ("A moving party is deemed to have waived and abandoned a posttrial motion when that party files a notice of appeal.").

As for the plaintiffs' claim that the district court could not consider the police reports on hearsay grounds, Jennie argued the exhibits were relevant and admissible "for the nonhearsay purpose of showing the effect on, or state of mind of, Ellen and the fact that she was afraid of Joe." We find no abuse of discretion.

In any event, the plaintiffs admit that police were called to Gerry and Ellen's home on July 22, 2010, and on November 8, 2011. Joe testified, "I may have pushed him." Jennie testified Joe pushed their eighty-six year old father, and Elizabeth testified police were called because Joe laid hands on Gerry. *See State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) ("[N]otwithstanding the presumption of prejudice from the admission of such evidence, the erroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record.").

***B. Testamentary capacity.*** Ellen was legally competent to execute the November 15, 2013 codicil to her will if she possessed the requisite testamentary capacity, i.e.: (1) knowledge a will was being made, (2) knowledge of the nature and extent of her property, (3) an ability to identify and remember the persons to whom she would naturally give her property, and (4) knowledge of how she wanted to distribute his property. *See In re Estate of Lachmich*, 541 N.W.2d 543, 545–46 (Iowa Ct. App. 1995). Iowa law presumes a testator has the mental ability to make a will and does so free from undue influence. *In re Estate of Pritchard*, 443 N.W.2d 95, 98 (Iowa Ct. App. 1989). In contesting their mother's will, the plaintiffs have the burden to overcome that presumption by showing Ellen lacked the mental capability to sign the fourth codicil on the date of execution. *See In re Estate of Springer*, 110 N.W.2d 380, 383 (Iowa 1961) ("[T]he burden is upon the contestants to show lack of mental capacity of the testatrix . . . ." (citation omitted)).

As noted by the district court, the plaintiffs' burden was a high hurdle inasmuch as Dr. DiFresco examined Ellen on the date she signed the fourth codicil and concluded Ellen did have the requisite knowledge. Elizabeth admits she has no evidence Ellen lacked testamentary capacity on the dates the first, second, third, and fourth codicils were signed. Joe admits that at all relevant times Ellen knew her heirs, including Joe himself, and her relationships with those heirs. Joe also admits he has no evidence to prove Ellen did not understand her estate planning documents or how she wanted to distribute her assets. Ellen's brother, Robert Peterson, testified he never questioned Ellen's capacity, and that at all relevant times she knew her family and her relationships, was capable of forming and expressing her opinions, and was capable of deciding how to divide her

property.  Similarly, Ellen's long-time friend and former sister-in-law, Elizabeth Houts, testified that at all relevant times Ellen was competent, knew her family and relationships, was oriented to time and her surroundings, was capable of forming and expressing her own opinions, and was capable of deciding how she wanted her property distributed.  We agree with the district court the plaintiffs have not cleared the requisite hurdle on this summary judgment record.  The district court's ruling addresses the plaintiffs' proffered evidence and the weaknesses of their assertions.  Further recitation of the district court's ruling is unnecessary.

*C. Undue influence.*  To set aside Ellen's will on grounds of undue influence, the plaintiffs must prove: (1) Ellen was susceptible to undue influence; (2) Jennie had an opportunity to exercise undue influence and effect a wrongful purpose; (3) Jennie was inclined to unduly influence Ellen to procure an improper favor; and (4) the resulting will was the clear effect of undue influence.  *See In re Estate of Bayer*, 574 N.W.2d 667, 671 (Iowa 1998); *see also Burkhalter v. Burkhalter*, 841 N.W.2d 93, 106 (Iowa 2013) (clarifying that contestant must prove undue influence by a preponderance of the evidence, but the causation element requires clear proof).

The district court wrote:

> The plaintiffs admit that they have little beyond their own suspicions to support a claim of undue influence.  They present their bare claims of undue influence, several ambiguous situations years apart from the issuance of the actual codicil in question where they claim [Jennie] unduly influenced Ellen, and an expert witness report with significant errors.  This is inadequate.

After discussing the plaintiffs' allegations, the district court summarized the record:

> Ellen's treating physicians were quite clear that Ellen's faculties were sufficiently sharp so as not to be readily susceptible to undue

influence. Plaintiffs' claims of undue influence are purely speculative; both Joe and Elizabeth noted that they weren't prevented from seeing Ellen, and they both had little time to see her. Additionally, both of them had a storied relationship with Ellen.

Because the district court did not err in concluding the plaintiffs failed to produce evidence sufficient to survive summary judgment, we affirm.

**AFFIRMED.**

All judges concur; Doyle, J., writes separately.

**DOYLE, Judge.** (writing separately)

I concur, but write separately to address two appellate practice issues.

The parties' 1574-page appendix contains 1214 pages of exhibits identified in the table of contents as follows:

EXHIBITS:

1. Exhibit 3, subparts (A) – (Q)………………………………………359
2. Exhibit 4, subparts (R) – (BB)………………………………..…439
3. Exhibit 5, subparts (1) – (32)………………………………......640
4. Exhibit 6, subparts (33) – (53)…………………………………805
5. Exhibit 7, subparts (54) – (55)………………………………1009
6. Exhibit 8, subparts (56) – (59)………………………………1157
7. Exhibit 9, subpart (60)………………………………………1337
8. Exhibit 10, subparts (61) – (63)…………………………..1422
9. Attachments (CC) – (EE)
     (presumably meant to be subparts to Exhibit 4)……………1545

No descriptors are provided for the 94 discrete exhibits nor does the table of contents state the page number where each exhibit appears. Iowa Rule of Appellate Procedure 6.905(4)(c) requires that if exhibits are included in the appendix "the table of contents shall . . . give a concise description of [each] exhibit (e.g., 'warranty deed dated . . . '; 'photograph of construction site'; 'Last Will and Testament executed on . . . '), and state the page number at which the exhibit appears in the appendix." Needless to say, this table of contents was not helpful in any way in locating documents.

While I have this soapbox, I expound on another troubling issue—those awful condensed transcripts. You know, the ones with four pages of testimony crammed onto one page. Some 218 pages of these things were interspersed among the exhibits in the appendix. Of course, the table of contents gives us no clue as to whose testimony is included or where.

At one time, in the paper world, condensed transcripts served a useful purpose. There is no excuse for them in the electronic world. They are difficult to read on a screen, particularly on a tablet. The small print is difficult to read, particularly for the more mature reader, and poor scans just get fuzzier if you enlarge them. On some condensed transcripts the pages read from side to side, on others the pages read from top to bottom. Either way, scrolling them is cumbersome and frustrating. Please quit using them.

In any event, our court rules ban the use of condensed transcripts in the courts. Iowa Rule of Electronic Procedure 16.402 provides, "Transcripts must be filed electronically . . . in accordance with . . . the formatting requirements of Iowa Rule of Appellate Procedure 6.803(2)." Rule 6.803(2)(f) *prohibits* the use of condensed transcripts. Specifically, the rule states: "Condensed transcripts, which include multiple pages of transcript on a single page, may not be submitted." Although rule 6.905(7) is silent on the matter concerning inclusion in the appendix of transcripts of proceedings and depositions not filed electronically, I believe the prohibition of the use of condensed transcripts applies to *any* submission to the courts. And it should not matter whether the transcript is of proceedings, an evidentiary deposition, an attachment to some filing in district court, or some random exhibit as appears in the appendix here. If I am wrong, someone in a higher pay grade can tell me.