**IN THE COURT OF APPEALS OF IOWA**

No. 22-0388
Filed March 8, 2023

**IN THE MATTER OF THE ESTATE OF MICHAEL D. JOHNSON, Deceased.**

**STEVEN R. JOHNSON,**
     Appellee,

**vs.**

**MATTHEW M. JOHNSON,**
     Appellant.
_____

     Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

Judge.


     An estate appeals two rulings on division of proceeds from the sale of

farmland operated as a partnership.  **AFFIRMED.**


     Alexander S. Momany and Mark D. Fisher of Howes Law Firm, PC, Cedar

Rapids, and Monty L. Fisher, Fort Dodge, for appellant.

     Spencer S. Cady of Nyemaster Goode, P.C., Des Moines, for appellee.


     Heard by Tabor, P.J., and Schumacher and Buller, JJ.

**TABOR, Presiding Judge.**

Michael Johnson died intestate in 2017. At the time of his death, he and his brother, Steven, each owned an undivided one-half interest in their family farm. The brothers ran the farm as a partnership. Now Michael's estate appeals two probate rulings in favor of Steven. First, the estate contends the district court should have found the partnership liable for a bank loan that Michael took out because the line of credit was secured by the farmland. Second, the estate argues the court erred in rejecting its claim to proceeds from Steven's sale of farm machinery. Because substantial evidence supports the court's findings, we affirm on both issues.

## I. Facts and Prior Proceedings

Michael and Steven inherited 160 acres of farmland from their father and held it as tenants in common. They raised crops and livestock, with Michael doing the day-to-day work and Steven supplying the machinery. Steven also had a full-time job outside of farming. The brothers held a joint bank account for farm income and expenses—unsurprisingly called "the farm account." Steven used the account to buy equipment. But Michael withdrew money from it for both business and personal expenses. And Michael lived on the farm until his death in 2017.

After Michael's death, the district court appointed his son Matthew as administrator of the estate. In 2021, the estate and Steven agreed to sell the farmland for $800,000. After those sale proceeds were deposited in a trust account, a dispute arose over how they should be distributed. The estate requested a hearing on the distribution. In the meantime, Steven filed a claim against the estate for $426,125 minus $200,000 that he already received. The

estate responded with a claim for half of the nearly $89,000 that Steven received selling farm equipment after Michael's death.[1]

In deciding this probate matter, the district court focused on another area of law: business associations. It found that Michael and Steven formed a partnership. And it addressed the debts and assets of the partnership to determine how the proceeds of the farm sale should be divided. Relevant on appeal are the court's determinations about Michael's loan and Steven's sale of the machinery.

In 2010, Michael applied for a $200,000 line of credit from Security Savings Bank and took out a loan of around $90,000, secured by a mortgage against the farmland. When Michael died, the outstanding balance was $57,286, which the estate paid in full. The estate argued that amount should be subtracted from the land proceeds before division and Steven owed $34,000 on the mortgage over the pendency of the estate. Steven disagreed, arguing the obligation belonged to Michael—not the partnership. The court agreed with Steven and found the mortgage did not create a debt for the partnership.

On the second issue, the estate claimed Steven owed it half of the $88,914 in proceeds from his sale of the machinery. The court agreed the machinery was partnership property. But it accepted Steven's testimony that he sold it at a loss and did not ask the estate for reimbursement. So the court denied the estate's claim for the sale proceeds.

Bottom line, the court awarded Steven $197,811—the original claim minus the $200,000 advanced payment. The estate appeals.

---

[1] The equipment included a combine, tractors, an auger wagon, a planter, a trailer tricycle, and a round bailer.

## II. Scope and Standard of Review

Contested claims are tried as actions at law, so we review for correction of legal error. Iowa Code § 633.33 (2021); Iowa R. App. P. 6.907. We are bound by the district court's fact findings if they are supported by substantial evidence.[2] *In re Est. of Boyd*, 634 N.W.2d 630, 636 (Iowa 2001). Evidence is substantial if reasonable minds could view it as adequate to reach the same findings. *Est. of Lachmich*, 541 N.W.2d 543, 545 (Iowa Ct. App. 1995). On the flipside, evidence is not insubstantial if it also supports contrary inferences. *Id.* In other words, we don't ask whether the evidence might support a different finding, but whether it supports the findings made. *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996).

On a related note, the parties debate whether we must accept the district court's credibility determinations. In actions at law, it is district court's prerogative to decide which evidence to believe. *Id.* That court has a better chance to evaluate credibility than we do on appeal. *Id.* Our job is to decide whether substantial evidence supports the court's findings according to those witnesses whom the trial judge believed. *Id.*

## III. Analysis

### A. Mortgage of Farmland

The estate first argues the $90,000 that Michael borrowed from Security Savings Bank was a partnership loan. Why? Because it was secured by a

---

[2] On the other hand, the court's conclusions of law and its application of the law to the facts do not bind us. *In re Est. of Martin*, No. 11-0690, 2012 WL 1431490, at *3 (Iowa Ct. App. Apr. 25, 2012).

mortgage on the farmland, signed by Steven, and was likely deposited into the farm account. In the estate's view, the court should have deducted the loan balance from the farm-sale proceeds before dividing them. Defending the district court, Steven maintains that substantial evidence supports its finding that the loan was Michael's personal obligation. So no deduction is necessary.

As a starting point, the dispute is not whether the brothers formed a partnership. The parties agree they did. *See* Iowa Code § 486A.101(6) (defining a partnership as "an association of two or more persons to carry on as co-owners a business for profit"). The dispute is whether Michael's act of taking out the bank loan was binding on the partnership. To resolve that dispute we look to the uniform partnership act, which describes how one partner may act as an agent for the partnership:

> 1. Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority.
> 2. An act of a partner which is not apparently for carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership only if the act was authorized by the other partners.

*Id.* § 486A.301. And partners are "jointly and severally" liable for the obligations of the partnership "unless otherwise agreed by the claimant or provided by law." *Id.* § 486A.306(1).

Applying these provisions, the district court found "when Michael took out the loan against the farmland he did so acting in his individual capacity as a tenant

in common, not as a partner and agent of the partnership." The court acknowledged it was "understandable" why the estate thought otherwise. Indeed, Steven and his wife signed the mortgage, placing the farmland at risk of foreclosure if Michael defaulted on the loan payments.[3] And Steven speculated that Michael deposited the loan proceeds in the farm account, perhaps spending them on livestock, as well as his personal expenses.[4]

But the court was persuaded by the fact that only Michael signed the promissory note.[5] And the court believed Steven's testimony that both the banker and Michael assured Steven that he did not share in Michael's obligation. Steven testified that Michael said, "the debt was his, it was not mine, but I had to sign so I knew he borrowed money against the farm."

We find substantial evidence to support the district court's finding that Michael took out a personal, not a partnership, loan. That finding was bolstered by Steven's testimony, which the court believed. *See Forristall*, 551 N.W.2d at 614 ("[F]actual disputes depending heavily on such credibility are best resolved by the district court."). According to Steven, Michael did not profess that he was acting for the partnership in signing the note. And both the bank and Steven received notice that Michael—by his own admission—lacked authority to bind the

---

[3] In their appellate briefs, the parties devote part of their analyses to arguing whether the farmland was partnership property. But the district court did not consider that question, so neither do we.

[4] Steven testified that he "argued about [Michael] taking [the loan] out in the first place, because before dad died, he said never mortgage the farm, but [Michael] needed the money."

[5] The promissory note is not in the record. But under "Secured Debt," the mortgage document provides: "PROMISSORY NOTE SIGNED BY MICHAEL D. JOHNSON IN THE AMOUNT OF $90,198.15 DATED FEBRUARY 4, 2010, WITH A MATURITY DATE OF APRIL 4, 2010. THE INTEREST RATE IS 7.95%."

partnership to that debt. Iowa Code § 486A.301(1).[6] Granted, Michael is unavailable to rebut Steven's version. But the estate did not offer any witnesses from the bank or Michael's family to contradict Steven's claim that Michael did not intend to bind the partnership. *See generally Bank of the West v. Early Farm P'ship*, No. 10-1093, 2011 WL 1136247, at *5–6 (Iowa Ct. App. Mar. 30, 2011) (considering affidavit from loan officer that he did not know partner lacked authority to execute mortgage on behalf of partnership). Nor did it offer proof showing the loan benefited the partnership business.

The estate insists that it was "inconsistent" for the district court to find that Michael and Steven formed a partnership to carry on the farming business but not to find that Steven was liable for the debt secured by the mortgage he signed. Our review of the scanty evidence in the record reveals no such inconsistency. Steven's testimony supports the finding that Michael took out the debt as an individual and not as a business partner. The debt cannot be attributed to Steven or taken out of the farm sale proceeds. So we affirm the district court on this issue.

## B. Sale of Equipment

The estate next argues that it is entitled to proceeds from Steven's sale of the farm equipment—about $44,450—because it was partnership property. *See*

---

[6] The district court also held that "mortgaging the farmland was a transaction outside the ordinary course of business" for these brothers, thus requiring approval of both partners under section 486A.301(2). We are not convinced that borrowing to sustain the farm operation couldn't be part of the ordinary course of their business, even if this were the first and only time this land was mortgaged. But because we find substantial evidence under an alternative theory, we need not embrace that holding.

Iowa Code § 486A.203 (defining partnership property as "[p]roperty acquired by a partnership as property of the partnership and not of the partners individually").

The district court agreed with the estate that the machinery was partnership property. But it also found that Steven did not profit from the sale. "Credible testimony established the machinery was purchased with funds from the farm account and was sold at a loss." The court recounted Steven's testimony and made explicit credibility findings:

> Steven testified he received less in sale proceeds than was owed against the machinery and equipment. Steven's testimony is credible and uncontroverted, although he was unable to give specific loan balances and did not provide any documentary evidence in support thereof. Steven avers he lost money from the sale of the machinery and equipment but is not asking the estate to reimburse him for the loss.

The court thus rejected the estate's claim against Steven for the proceeds of the equipment sales.

On appeal, the estate contests the credibility of Steven's testimony because he did not offer any supporting documentation that he sold the equipment at a loss. True, Steven testified he did not know how much money he spent to pay off the loans and added: "I know it was more money than I got for the equipment. I don't know the numbers exactly off the top of my head." Still, Steven's recollection was enough for the district court. And it is enough for us. *See Lachmich*, 541 N.W.2d at 545 (cautioning appellate court against assessing witness credibility).

The estate had the burden to prove its claim to half the equipment-sale proceeds. It presented no evidence to rebut Steven's testimony.[7] The court relied

---

[7] In oral argument, Steven's counsel agreed it would have been "cleaner" to provide documentation on the machinery losses, but that did not happen.

on that uncontroverted testimony, and we decline to depart from the court's credibility findings.  Substantial evidence supports the court's finding that Steven sold the equipment at a loss and had no profits to share with the partnership.  We thus find no error and affirm.

**AFFIRMED.**